**POULIN | WILLEY | ANASTOPOULO, LLC**

Eric M. Poulin (California State Bar No. 298476)

    *eric.poulin@poulinwilley.com*

Blake G. Abbott (*Pro Hac Vice* Forthcoming)

    *blake.abbott@poulinwilley.com*

Paul J. Doolittle (*Pro Hac Vice* Forthcoming)

    *paul.doolittle@poulinwilley.com*

32 Ann Street

Charleston, SC 29403

Telephone: (803) 222-2222

Fax: (843) 494-5536

*Attorneys for Plaintiff Hannah Bui and The Putative Class*

## IN THE UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| Hannah Bui, Individually and on Behalf of All Others Similarly Situated,<br><br>              Plaintiff,<br><br>      v.<br><br>Zuru, LLC,<br><br><br><br>            Defendant. | Case No.:<br><br>**CLASS ACTION COMPLAINT**<br><br><u>**DEMAND FOR JURY TRIAL**</u> |

Plaintiff Hannah Bui ("Bui" or "Plaintiff"), individually and on behalf of all others similarly situated, respectfully submits the following for her Complaint against Zuru, LLC ("Zuru" or "Defendant") and alleges upon personal knowledge as to herself and her own acts and experiences and, as to all other matters, upon information and belief, including investigation conducted by her attorneys. This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1332(d) because: (1) there are 100 or more putative Class Members, (ii) the

CLASS ACTION COMPLAINT

aggregate amount in controversy exceeds $5,000,000.00, exclusive of interest and costs, and (iii) there is minimal diversity because Plaintiff and Defendant are citizens of different states. This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367. This Court has personal jurisdiction over Defendant because Defendant is headquartered within this District given that Defendant's headquarters are located within Los Angeles County. Venue in this District and Court is proper pursuant to 28 U.S.C. §1391(b) because Defendant is a resident of this District, a substantial part of the conduct or omissions giving rise to Plaintiff's claims occurred in this District, Defendant is headquartered in this District, and Defendant Zuru has intentionally availed itself of the laws and markets within this District.

## INTRODUCTION

1.        Plaintiff brings this class action lawsuit as an individual who purchased Defendant's Pinkfong Brand Baby Shark Toys (hereinafter "Products") for normal household use. Unfortunately, the Products are defective because they impale or cut users, as documented by Defendant's own Recall of the Products.[1] Defendant's design and manufacture of the Products results in a child's toy made of hard plastic with sharp edges. In more detail, the toy is a shark with hard fins. If the toy's sharp and firm edges meet one's skin with enough force, then user's skin will be lacerated, or the user will be impaled. The Products were formulated, designed, manufactured, marketed, advertised, distributed, and sold by Zuru, LLC. As defined by Defendant's Recall, the Products include: Robo Alive Junior Baby Shark Sing & Swim Bath Toys (full-size) and Robo Alive Junior Mini Baby Shark Swimming Bath Toys (mini-size).[2]

2.        Each of the Products is designed, manufactured, distributed, marketed, and sold by Zuru to consumers across the United States. The Products are sold both in retail establishments and online, including stores within this District.

---

[1] https://www.cpsc.gov/Recalls/2023/Zuru-Recalls-7-5-Million-Baby-Shark-and-Mini-Baby-Shark-Bath-Toys-With-Hard-Plastic-Top-Fins-Due-to-Risk-of-Impalement-Laceration-and-Puncture-Injuries-to-Children
[2] *Id.*

3.        The Product is defective because each individual Product has the potential to impale or cut and cause serious harm, if not death, to the children who use such products. Despite this known laceration and impalement risk, Defendant represented that the Products are safe and effective for their intended use.

4.        Other manufacturers formulate, produce, and sell non-defective toys with formulations and production methods that do not cause the product to impale users, which is evidence that this impalement risk inherent with Defendant's Products is demonstrably avoidable.

5.        Feasible alternative formulations, designs, and materials are currently available and were available to Defendant when the Products were formulated, designed, and manufactured.

6.        At the time of their purchases, Zuru did not notify Plaintiff, and other similarly situated consumers, of the Products' risk of impalement through its product labels, instructions, the ingredients list, other packaging, advertising, or in any other manner, in violation of state and federal law.

7.        Plaintiff purchased the Product while lacking the knowledge that Product could impale or lacerate those who use the product, thus causing serious harm to those who use such Products.

8.        Because Plaintiff was injured by the Products and all consumers purchased the worthless and dangerous Products, they have suffered losses.

9.        As a result of the above losses, Plaintiff seeks damages and equitable remedies.

## **PARTIES**

10.        Plaintiff Hannah Bui is a resident and citizen of Greenville, South Carolina. Greenville is located in Greenville County of South Carolina.

11.        Plaintiff purchased the Products in November of 2022 as Christmas present for her minor child. Plaintiff would not have purchased Defendant's Products had she known that it was a dangerous object for her minor child.

12.        Plaintiff purchased Defendant's Products at Academy Sports in Greenville, South Carolina.

CLASS ACTION COMPLAINT

13.         Defendant Zuru, LLC is a California company that has been incorporated under the laws of the State of California since 2016. Defendant's corporate headquarters are located at 228 Nevada Street, El Segundo, CA 90245. Defendant's corporate headquarters are located within Los Angeles County, CA.

14.         Defendant manufactures, imports, distributes, markets, and sells many types of toy products, including the Products at hand.

15.         Upon information and belief, the planning and execution of the advertising, marketing, labeling, packaging, testing, and/or corporate operations concerning the Products and the claims alleged herein was primarily carried out at Defendant's headquarters and facilities within California.

## JURISDICTION AND VENUE

16.         This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1332(d) because: (1) there are 100 or more putative Class Members, (ii) the aggregate amount in controversy exceeds $5,000,000.00, exclusive of interest and costs, and (iii) there is minimal diversity because Plaintiff and Defendant are citizens of different states.

17.         This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

18.         This Court has personal jurisdiction over Defendant because Defendant is headquartered within this District given that Defendant's headquarters are located within Los Angeles County.

19.         Venue in this District and Court is proper pursuant to 28 U.S.C. §1391(b) because Defendant is a resident of this District, a substantial part of the conduct or omissions giving rise to Plaintiff's claims occurred in this District, Defendant is headquartered in this District, and Defendant Zuru has intentionally availed itself of the laws and markets within this District.

## FACTUAL ALLEGATIONS

20.    Zuru is a well-established and profitable corporation known for its production, distribution, and importation of toy products, including the Pinkfong Baby Shark Products at hand.[3]

21.    Zuru also distributes toys worldwide. Zuru's website even states: "One of the largest toy companies in the world, ZURU distributes to all major retailers in over 120 countries".[4]

22.    Zuru is a self-proclaimed award-winning brand that is "inspired by the limitless possibilities of kids' imaginations, ZURU is an company devoted to reimagining what it means to play."[5]

***The Products***

23.    The Products at hand are toys made for children that resemble characters from a notable children's show and music video, Baby Shark.[6]

24.    Baby Shark is immensely popular with children, having nearly as many views as there are people on Earth, at roughly 7 billion views.[7]

25.    In more detail, these products are shark shaped toys, similar to the ones as seen below[8]:



---

[3] https://www.playgroundequipment.com/how-much-20-major-toy-brands-made-in-2020/
[4] https://Zurutoys.com/
[5] Id.
[6] https://www.cpsc.gov/Recalls/2023/Zuru-Recalls-7-5-Million-Baby-Shark-and-Mini-Baby-Shark-Bath-Toys-With-Hard-Plastic-Top-Fins-Due-to-Risk-of-Impalement-Laceration-and-Puncture-Injuries-to-Children
[7] https://www.billboard.com/pro/baby-shark-goes-viral-timeline/
[8] https://www.cpsc.gov/Recalls/2023/Zuru-Recalls-7-5-Million-Baby-Shark-and-Mini-Baby-Shark-Bath-Toys-With-Hard-Plastic-Top-Fins-Due-to-Risk-of-Impalement-Laceration-and-Puncture-Injuries-to-Children

CLASS ACTION COMPLAINT

1
2
3
4
5
6
7
8
9
10
11
12
13



14
15
16
17
18
19
20
21
22
23
24
25
26
27
28



1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28



**Zuru's Misrepresentations and Omissions are Actionable**

26.    Plaintiff bargained for a toy product that was safe to use. Defendant's knife-like Products were, and still are, unsafe. As a result of the risk of impalement, Plaintiff, and all others similarly situated, were deprived the basis of their bargain given that Defendant sold them a product containing sharp edges that are supported by hard plastic. This dangerous impalement risk inherent to the Products renders them unmerchantable and unfit for their normal intended use.

27.    The Products are not fit for their intended use by humans as they expose consumers to dangerous sharp, jagged, and pointed edges with firm support. Plaintiff is further entitled to damages for the injury sustained in being exposed to such danger, damages related to Defendant's conduct, and injunctive relief.

28.    Plaintiff seeks to recover damages because the Products are adulterated, defective, worthless, and unfit for human use due to the risk of impalement. This impalement slices skin, tissue, veins, and arteries which greatly increases the risk of death.

29.    Zuru engaged in fraudulent, unfair, deceptive, misleading, and/or unlawful conduct stemming from its omissions surrounding the risk of impalement affecting the Products.

30.    Indeed, no reasonable consumer, including Plaintiff, would have purchased the Products had they known of the material omissions of material facts regarding the possibility of impalement.

## PLAINTIFF'S FACTUAL ALLEGATIONS

31.    Plaintiff Hannah Bui bought a Pinkfong Baby Shark for personal household use, that being amusement for her minor child, near her residence in Greenville, South Carolina.

32.    Plaintiff purchased the Product at Academy Sports in Greenville, South Carolina. Plaintiff would not have purchased this Product if the true dangerous nature of this Product had she known of the true dangerous nature.

33.    On the date of the Products' recall by Defendant, June 22, 2023, Plaintiff was in possession of Defendant's product. When she purchased the Product, Plaintiff intended to buy a toy for her child that would be safe for normal household use, such as a child's

CLASS ACTION COMPLAINT

amusement, but instead was sold a dangerous, and thus worthless, sharp-edged piece of plastic.

34.    Nowhere on the Products' packaging did Zuru disclose that the Products could slice and impale or lacerate its users.

35.    If Plaintiff had been aware of the risk of impalement in the Products, she would not have purchased the Products or would have paid significantly less.

36.    As a result of Defendant's actions, Plaintiff has incurred damages.

37.    If the Products and packaging were reformulated to be safe and avoid impalement, Plaintiff would choose to purchase the Products again in the future.

## CLASS ACTION ALLEGATIONS

38.    Plaintiff Bui brings this case as a class action pursuant to Federal Rule of Civil Procedure 23 on her own behalf and as the Class representatives on behalf of the following:

**Nationwide Class:** All persons within the United States who purchased the Products within the applicable statute of limitations.

**South Carolina Subclass:** All persons within South Carolina who purchased the Products within the applicable statute of limitations.

39.    The Nationwide Class and South Carolina Subclass shall collectively be referred to herein as the "Classes."

40.    Plaintiff reserves the right to amend the Class definitions if further investigation and discovery indicate that the Class definitions should be narrowed, expanded, or otherwise modified.

41.    Excluded from the Classes are governmental entities, Defendant Zuru, Defendant's officers, directors, affiliates, legal representatives, and employees.

42.    This action has been brought and may be maintained as a class action under Federal Rule of Civil Procedure 23.

43.    **Numerosity** – Federal Rule of Civil Procedure 23(a)(1). The Classes numbers at least in the thousands of persons. As a result, joinder of all Class members in a single action is impracticable. Class members may be informed of the pendency of this class action

CLASS ACTION COMPLAINT                    9

1    through a variety of means, including, but not limited to, direct mail, email, published
2    notice, and website posting.

3    44.    **Existence and Predominance of Common Questions of Law and Fact** – Federal
4    Rules of Civil Procedure 23(a)(2) and 23(b)(3). There are questions of fact and law common
5    to the Classes that predominate over any question affecting only individual members. Those
6    questions, each of which may also be certified under Rule 23(c)(4), include without
7    limitation:

8        a.    whether Zuru's advertising, merchandising, and promotional materials
9              directed to Plaintiff were deceptive regarding the risks posed Zuru's
10             Products;

11       b.    whether Zuru made representations regarding the safety of the Products;

12       c.    whether Zuru omitted material information regarding the safety of the
13             Products;

14       d.    whether Zuru's Products were merchantable;

15       e.    whether Zuru violated the consumer protection statutes invoked herein;

16       f.    whether Zuru's conduct alleged herein was fraudulent; and

17       g.    whether Zuru was unjustly enriched by sales of the Products.

18   45.    The questions set forth above predominate over any questions affecting only
19   individual persons concerning sales of Zuru's Products throughout the United States and a
20   class action is superior with respect to considerations of consistency, economy, efficiency,
21   fairness, and equity to other available methods for the fair and efficient adjudication of
22   Plaintiff's claims.

23   46.    **Typicality** – Federal Rule of Civil Procedure 23(a)(3). Plaintiff's claims are typical
24   of those of the Classes in that the Class members uniformly purchased Zuru's Products and
25   were subjected to Zuru's uniform merchandising materials and representations at the time
26   of purchase.

27   47.    **Superiority** – Federal Rule of Civil Procedure 23(b)(3). A class action is the
28   appropriate method for the fair and efficient adjudication of this controversy. The
     presentation of separate actions by individual Class members could create a risk of

CLASS ACTION COMPLAINT

inconsistent adjudications, establish incompatible standards of conduct for Zuru, and/or substantially impair or impede the ability of Class members to protect their interests. In addition, it would be impracticable and undesirable for each member of the Classes who suffered an economic loss to bring a separate action. The maintenance of separate actions would place a substantial and unnecessary burden on the courts and could result in inconsistent adjudications, while a single class action can determine, with judicial economy, the rights of all Class members.

48.     **Adequacy** – Federal Rule of Civil Procedure 23(a)(4). Plaintiff is an adequate representative of the Classes because she is a member of the Classes and her interests do not conflict with the interests of the Classes that she seeks to represent. The interests of the members of the Classes will be fairly and adequately protected by Plaintiff and her undersigned counsel. Counsel is experienced in the litigation of civil matters, including the prosecution of consumer protection class action cases.

49.     **Insufficiency of Separate Actions** – Federal Rule of Civil Procedure 23(b)(1). Absent a representative class action, members of the Classes would continue to suffer the harm described herein, for which they would have no remedy. Even if separate actions could be brought by individual consumers, the resulting multiplicity of lawsuits would cause undue burden and expense for both the Court and the litigants, as well as create a risk of inconsistent rulings and adjudications that might be dispositive of the interests of similarly situated purchasers, substantially impeding their ability to protect their interests, while establishing incompatible standards of conduct for Zuru. The proposed Classes thus satisfy the requirements of Fed. R. Civ. P. 23(b)(1).

50.     **Declaratory and Injunctive Relief** – Federal Rule of Civil Procedure 23(b)(2). Zuru has acted or refused to act on grounds generally applicable to Plaintiff and the other members of the Classes, thereby making appropriate final injunctive relief and declaratory relief, as described below, with respect to the members of the Classes as a whole. In particular, Plaintiff seeks to certify Classes to enjoin Zuru from selling or otherwise distributing the Products as labeled until such time that Defendant can demonstrate to the

CLASS ACTION COMPLAINT

1    Court's satisfaction that the Products confer the advertised benefits and are otherwise safe

2    to use as intended.

3    51.    Additionally, the Classes may be certified under Rule 23(b)(1) and/or (b)(2)

4    because:

5            a.    The prosecution of separate actions by individual members of the Classes

6                  would create a risk of inconsistent or varying adjudications with respect to

7                  individual members of the Classes that would establish incompatible

8                  standards of conduct for the Zuru;

9            b.    The prosecution of separate actions by individual members of the Classes

10                 would create a risk of adjudications with respect to them which would, as

11                 a practical matter, be dispositive of the interests of other members of the

12                 Classes not parties to the adjudications, or substantially impair or impede

13                 their ability to protect their interests; and/or

14           c.    Zuru has acted or refused to act on grounds generally applicable to the

15                 Classes, thereby making appropriate final and injunctive relief with respect

16                 to the members of the Classes as a whole.

17                               **CAUSES OF ACTION**

18                                    **COUNT I**

19                                **Unjust Enrichment**

20    **(On Behalf of the Nationwide Class and, alternatively, the Subclass)**

21    52.    Plaintiff incorporates the allegations set forth in Paragraphs 1-51 as though set forth

22    fully herein.

23    53.    Plaintiff, and the other members of the Classes, conferred benefits on Defendant in

24    the form of monies paid to purchase Defendant's defective and worthless Products. These

25    monies were not gifts or donations but were given in exchange for the Products.

26    54.    Defendant voluntarily accepted and retained these monetary benefits mentioned

27    above.

28

CLASS ACTION COMPLAINT                    12

55.     Because this benefit was obtained unlawfully, namely because of Defendant's marketing and sale of products unfit for their intended use, it would be unjust and inequitable for Defendant to retain the benefit without paying the value thereof.

56.     Defendant received benefits in the form of revenues from purchases of the Products to the detriment of Plaintiff, and the other members of the Classes, because Plaintiff, and members of the Classes, purchased mislabeled products that were not what Plaintiff and the Classes bargained for and were not safe and effective, as claimed.

57.     Defendant has been unjustly enriched in retaining the revenues derived from the purchases of the Products by Plaintiff and the other members of the Classes. Retention of those monies under these circumstances is unjust and inequitable because Defendant's labeling of the Products was misleading to consumers, which caused injuries to Plaintiff, and members of the Classes, because they would have not purchased the Products had they known the true facts.

58.     Because Defendant's retention of the non-gratuitous benefits conferred on them by Plaintiff and members of the Classes is unjust and inequitable, Defendant must pay restitution to Plaintiff and other members of the Classes for its unjust enrichment, as ordered by the Court.

## COUNT II

### Breach of Express Warranty

### (On Behalf of the Nationwide Class and, alternatively, the Subclass)

59.     Plaintiff incorporates the allegations set forth in Paragraphs 1-51 as though set forth fully herein.

60.     Plaintiff, and each member of the Classes, formed a contract with Defendant at the time they purchased the Products.

61.     The terms of the contract include the promises and affirmations of fact made by Defendant on the Products' packaging and through marketing and advertising.

62.     This labeling, marketing, and advertising constitute express warranties and became part of the basis of the bargain and are part of the standardized contract between Plaintiff and the members of the Classes and Defendant.

CLASS ACTION COMPLAINT                    13

63.     As set forth above, Defendant purports through its advertising, labeling, marketing, and packaging, to create an express warranty that the Product is safe for its intended use as a child's toy. Rather than being a child's toy that is safe for children to use and handle, the Products are unsafe given their sharp nature.

64.     Plaintiff and the members of the Classes performed all conditions precedent to Defendant's liability under this contract when they purchased the Products.

65.     Defendant breached express warranties relating to the Products and their qualities because Defendant's Products possess the capability to impale or cut users and cause injury, even when correctly used, at the time of purchase and the Products do not conform to Defendant's affirmations and promises described above.

66.     Plaintiff and each of the members of the Classes would not have purchased the Products had they known the true nature of the risk of the Product impaling or using those who used the Products.

67.     As a result of Defendant's breach of warranty, Plaintiff and each Class Member suffered and continue to suffer financial damage and injury, and are entitled to all damages, in addition to costs, interest and fees, including attorneys' fees, as allowed by law.

## COUNT III

### Breach of Implied Warranty

### (On Behalf of the Nationwide Class and, alternatively, the Subclass)

68.     Plaintiff incorporates the allegations set forth in Paragraphs 1-51 as though set forth fully herein.

69.     Zuru is a merchant and was at all relevant times involved in the manufacturing, distributing, warranting, and/or selling of the Products.

70.     The Products are "goods" under the relevant laws, and Zuru knew or had reason to know of the specific use for which the Products, as goods, were purchased.

71.     Zuru entered into agreements with retailers to sell its Products to be used by Plaintiff and Class Members for personal use.

72.     The implied warranty of merchantability included with the sale of each Product means that Zuru guaranteed that the Products would be fit for the ordinary purposes for

CLASS ACTION COMPLAINT                    14

which children's toys are used and sold, and were not otherwise injurious to consumers. The implied warranty of merchantability is part of the basis for the benefit of the bargain between Zuru, and Plaintiff and the Class Members.

73. Zuru breached the implied warranty of merchantability because the Products are not fit for their ordinary purpose of providing reasonably reliable and safe enjoyment for children because the Products have a risk of impalement or laceration. Therefore, the Products are not fit for their particular purpose of a being a child's toy.

74. Zuru's warranty expressly applies to the purchaser of the Products, creating privity between Zuru and Plaintiff and Class Members.

75. However, privity is not required because Plaintiff and Class Members are the intended beneficiaries of Zuru's warranties and its sale through retailers. Zuru's retailers were not intended to be the ultimate consumers of the Products and have no rights under the warranty agreements. Zuru's warranties were designed for and intended to benefit the consumer only, including Plaintiff and Class Members.

76. Zuru has been provided sufficient notice of its breaches of implied warranties associated with the Products. Zuru was put on constructive notice of its breach through its review of consumer complaints and other reports.

77. Had Plaintiff, Class Members, and the consuming public known that the Products could impale them and cause physical harm, they would not have purchased the Products or would have paid less for them.

78. As a direct and proximate result of the foregoing, Plaintiff and Class Members suffered and continue to suffer financial damage and injury, and are entitled to all damages, in addition to costs, interest and fees, including attorneys' fees, as allowed by law.

<u>**COUNT IV**</u>

**Breach of the Implied Warranty of Merchantability**

**(On Behalf of the Nationwide Class, or alternatively, on behalf of the Subclass)**

79. Plaintiff incorporates the allegations set forth in Paragraphs 1-51 as though set forth fully herein.

CLASS ACTION COMPLAINT

80.    Plaintiff brings this claim against Defendant, on behalf of herself and the other members of the Nationwide Class, and, alternatively, the State subclass pled in Paragraph 38 (the "Classes").

81.    Defendant is a merchant engaging in the sale of goods to Plaintiff and the Classes.

82.    There was a sale of goods from Defendant to Plaintiff and the Classes.

83.    As the developer, manufacturer, marketer, distributor, and/or seller of the defective Products, Defendant impliedly warranted to Plaintiff and the Classes that its Products were fit for their intended purpose in that they would be safe for Plaintiff and the Classes to use as a children's toy.

84.    Contrary to these representations and warranties, the Products were not fit for their ordinary use, and did not conform to Defendant's affirmations of fact and promises as use of the Products was accompanied by the risk of adverse health effects that do not conform to the packaging, which markets the Products as toy safe for use.

85.    Defendant breached the implied warranty in the contract for the sale of the Products by knowingly selling to Plaintiff and the Classes a product that Defendant knew would expose Plaintiff and the Classes to significant health risks, thus meaning Defendant knew that the Products were not fit for their intended purpose.

86.    Defendant was on notice of this breach, as they were made aware of the adverse health effects caused by contact with these jagged sharp, hard plastic edges that can result from the use of their Products.

87.    Plaintiff and the Classes did not receive the goods as bargained for because the goods they received were not merchantable as they did not conform to the ordinary standards for goods of the same average grade, quality, and value.

88.    Plaintiff and members of the Classes are the intended beneficiaries of Defendant's implied warranties.

89.    The Products were not altered by Plaintiff or the members of the Classes.

90.    Plaintiff and members of the Classes used the Products in the ordinary manner in which such toy devices were intended to be used.

91.    The Products were defective when they left the exclusive control of Defendant.

CLASS ACTION COMPLAINT

92.    The Products were defectively designed and/or manufactured and unfit for their intended purpose, and Plaintiff and members of the Classes did not receive the goods that they bargained for.

93.    Plaintiff and members of the Classes purchased the Products that contained the Defect, which was undiscoverable by them at the time of purchase and at any time during the class period.

94.    As a result of the defect in the Products, Plaintiff and members of the Classes have suffered damages including, but not limited to, the cost of the defective product, loss of use of the product and other related damage.

95.    Defendant breached the implied warranty of merchantability to the Plaintiff and Class members.

96.    Thus, Defendant's attempt to limit or disclaim the implied warranties in a manner that would exclude coverage of the Defect is unenforceable and void.

97.    Plaintiff and Class members have been damaged by Defendant's breach of the implied warranties.

98.    Plaintiff and Class members have suffered damages in an amount to be determined at trial and are entitled to any incidental, consequential, and other damages and other legal and equitable relief, as well as costs and attorneys' fees, available under law.

## **COUNT V**

### **Fraudulent Concealment**

**(On Behalf of the Nationwide Class, or alternatively, on behalf of the Subclass)**

99.    Plaintiff incorporates the allegations set forth in Paragraphs 1-51 as though set forth fully herein.

100.    Plaintiff brings this claim against Defendant, on behalf of herself and the other members of the Nationwide Class, and, alternatively, the State subclass pled in Paragraph 38 (the "Classes").

101.    Defendant had a duty to disclose material facts to Plaintiff and the Classes given their relationship as contracting parties and intended users of the Products. Defendant also had a duty to disclose material facts to Plaintiff and the Classes, namely that it was in fact

CLASS ACTION COMPLAINT

manufacturing, distributing, and selling harmful products unfit for human use, because Defendant had superior knowledge such that the transactions without the disclosure were rendered inherently unfair.

102.     During this time, Plaintiff, and members of the Classes, were using the Products without knowing the Products could slice or stab the users.

103.     Defendant failed to discharge its duty to disclose these material facts.

104.     In so failing to disclose these material facts to Plaintiff and the Classes, Defendant intended to hide from Plaintiff and the Classes that they were purchasing and consuming the Products with harmful defects that was unfit for human use, and thus acted with scienter and/or an intent to defraud.

105.     Plaintiff and the Classes reasonably relied on Defendant's failure to disclose insofar as they would not have purchased the defective Products manufactured and sold by Defendant had they known they possessed this risk of impalement.

106.     As a direct and proximate cause of Defendant's fraudulent concealment, Plaintiff, and the Classes, suffered damages in the amount of monies paid for the defective Products.

107.     As a result of Defendant's willful and malicious conduct, punitive damages are warranted.

## COUNT VI

### Strict Liability – Failure to Warn

**(On Behalf of the Nationwide Class, or alternatively, on behalf of the Subclass)**

108.     Plaintiff incorporates the allegations set forth in Paragraphs 1-51 as though set forth fully herein.

109.     Defendant had a duty to warn Plaintiff and the Class members regarding the true risks associated with the Products, namely those relating to laceration and impalement.

110.     These risks of impalement and laceration are inherent even when the Products are used in their foreseeable manner.

111.     Defendant was in a superior position to know of the actual risks, yet, as outlined above, chose to do nothing when the defects became known to them. Defendant knew or

CLASS ACTION COMPLAINT                    18

should have known that these Products provided a dangerous and inherent risks to those using said Products in a foreseeable manner.

112.    Defendant failed to provide adequate warnings regarding the risks of the Products after knowledge of the defects were known only to them.

113.    Defendant had information regarding the true risks but failed to warn Plaintiff and members of the Classes to strengthen their warnings. This sort of warning is feasible, given the massive amount of advertising put forth by Defendant and text already on the Products' packaging, as pictured above.

114.    Despite Defendant's knowledge of the defects and obligation to unilaterally strengthen the warnings, Defendant instead chose to actively conceal this knowledge from the public.

115.    Plaintiff and members of the Classes would not have purchased, chosen, and/or paid for all or part of the Products if they knew of the Defect and the risks of purchasing the Products.

116.    This Defect proximately caused Plaintiff's and Class members' damages.

117.    The Plaintiff and Class members have suffered damages in an amount to be determined at trial and are entitled to any incidental, consequential, and other damages and other legal and equitable relief, as well as costs and attorneys' fees, available under law.

## COUNT VII

### Strict Liability – Design Defect

### (On Behalf of the Nationwide Class, or alternatively, on behalf of the Subclass)

118.    Plaintiff incorporates the allegations set forth in Paragraphs 1-51 as though set forth fully herein.

119.    Plaintiff brings this claim against Defendant, on behalf of herself and the other members of the Nationwide Class, and, alternatively, the State subclass pled in Paragraph 38 (the "Classes").

120.    The design of the Products was defective and unreasonably dangerous.

121.    Defendant placed this Product into the market for purchase by consumers.

CLASS ACTION COMPLAINT                                   19

122.    Defendant knew or should have known that the Product will be used without inspection for defects.

123.    The Products proved to be defective, as demonstrated by Defendant's Recall.

124.    The Products cause injury, as documented by Defendant's Recall.

125.    The risk of impaling or lacerating the user while Plaintiff and members of the Classes used the Products, caused exposure to materials with dangerous and possibly toxic effects.

126.    The design of the Products rendered them not reasonably fit, suitable, or safe for their intended purpose.

127.    The risk of impalement and contact with sharp or jagged edges on the Products outweighed the benefits and rendered the Products unreasonably dangerous.

128.    There are other Products and other similar toys that do not impale or cut the users, meaning that there were other means of production available to Defendant.

129.    The Products were unreasonably unsafe, and the Products should have had stronger and clearer warnings or should not have been sold in the market.

130.    The Products did not perform as an ordinary consumer would expect.

131.    Plaintiff and Class members have suffered damages in an amount to be determined at trial and are entitled to any incidental, consequential, and other damages and other legal and equitable relief, as well as costs and attorneys' fees, available under law.

## COUNT VIII

### Negligent Failure to Warn

### (On Behalf of the Nationwide Class, or alternatively, on behalf of the Subclass)

132.    Plaintiff incorporates the allegations set forth in Paragraphs 1-51 as though set forth fully herein Plaintiff brings this claim against Defendant, on behalf of herself and the other members of the Nationwide Class, and, alternatively, the State subclass pled in Paragraph 38 (the "Classes").

133.    Defendant owed Plaintiff and Class members a duty of care and to warn of any risks associated with the Products.

134.    Defendant manufactured, distributed, and sold the Products.

CLASS ACTION COMPLAINT                    20

135.     Defendant knew or should have known of the risks associated with the Products in that they contained a defect which would result in the stabbing and cutting of those who used said Products. This defective nature is a sharp departure from the described advertised use of the Products, that being a safety toy designed for use by a child.

136.     It is foreseeable that a person, namely a child, would be injured in the reasonably foreseeable use of Defendant's Products as the Products are quite literally toys that the user would reasonably and foreseeably physically handle and grasp.

137.     Defendant knew or should have known that Plaintiff and the Class would not discover or realize the danger of the Products given that Plaintiff had no way of knowing of the Product's latent defect as an ordinary consumer would be unable to discover the Product could impale or lacerate the user without touching the Products, thus likely harming themselves.

138.     Instead of warning consumers of this risk of stabbing and cutting associated with its own Products, Defendant failed to warn Plaintiff and members of the Classes.

139.     A reasonable manufacturer, distributor, or seller, in the same or similar circumstance, would have warned of this danger or instructed on the safe use of the product given the readily apparent dangerous nature of the Products' sharp edges that would have been or should have been discovered through testing of said Products.

140.     Plaintiff was harmed as a result of Defendant's negligent failure to warn in that Plaintiff was deprived of her benefit of the bargain in reference to her purchase price paid for the dangerous Products.

141.     Defendant's negligent failure to warn is a substantial factor causing Plaintiff's harm. Plaintiff's harm results from Defendant's negligent failure to warn in that had there been an accurate warning put forth by Defendant describing the Products' dangerous nature, Plaintiff would not have purchased the Product.

142.     Plaintiff and Class members have suffered damages in an amount to be determined at trial and are entitled to any incidental, consequential, and other damages and other legal and equitable relief, as well as costs and attorneys' fees, available under law.

**COUNT IX**

CLASS ACTION COMPLAINT

**Negligent Design Defect**

**(On Behalf of the Nationwide Class, or alternatively, on behalf of the Subclass)**

143.     Plaintiff incorporates the allegations set forth in Paragraphs 1-51 as though set forth fully herein.

144.     Plaintiff brings this claim against Defendant, on behalf of herself and the other members of the Nationwide Class, and, alternatively, the State subclass pled in Paragraph 38 (the "Classes").

145.     Defendant owed Plaintiff and the Classes a duty to design the Products in a reasonable manner.

146.     The design of the Products was defective and unreasonably dangerous, causing exposure to materials with possibly deadly effects.

147.     The design of the Products caused them to be not fit, suitable, or safe for their intended purpose. The dangers of the Products outweighed the benefits and rendered the products unreasonably dangerous.

148.     There are other toys that do not impale or cut the users.

149.     The risk/benefit profile of the Products was unreasonable, and the Products should have had stronger and clearer warnings or should not have been sold in the market.

150.     The Products did not perform as an ordinary consumer would expect.

151.     The Defendant's negligent design of the Products was the proximate cause of damages to the Plaintiff and the Class members.

152.     Plaintiff and Class members have suffered damages in an amount to be determined at trial and are entitled to any incidental, consequential, and other damages and other legal and equitable relief, as well as costs and attorneys' fees, available under law.

## <u>COUNT X</u>

### Negligence

153.     Plaintiff incorporates the allegations set forth in Paragraphs 1-51 as though set forth fully herein.

154.     Defendant owed a duty to consumers to produce a product that was safe for its intended use.

CLASS ACTION COMPLAINT

155.     Defendant breached this duty by producing a product that was dangerous for its intended use. Defendant knew or should have known that the hard plastic toy with jagged or sharp edges was at risk of impaling the user and causing injuries once exposed to humans.

156.     As a direct result of this breach, Plaintiff suffered injury in that Plaintiff has been deprived of their benefit of the bargain. Plaintiff's injuries were caused in fact by Defendant's breach. But for Defendant's negligent manufacture and improper oversight, Plaintiff would not have been injured.

157.     Further, Plaintiff's injuries were proximately caused by Defendant's breach. It is foreseeable that a poorly designed plastic toy containing sharp edges would cause injury if the toys came into forceful contact with the user, and it is foreseeable that a user would lose their benefit of the bargain if they purchased a dangerous and worthless device.

158.     Plaintiff suffered damages in an amount to be determined at trial and Plaintiff is entitled to any incidental, consequential, and other damages and other legal and equitable relief, as well as costs and attorneys' fees, available under law.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff, individually and on behalf of the other members of the Classes alleged herein, respectfully request that the Court enter judgment in her favor and against Defendant as follows:

A.     For an order certifying the Classes under Rule 23 of the Federal Rules of Civil Procedure and naming Plaintiff as the representatives for the Classes and Plaintiff's attorneys as Class Counsel;

B.     For an order declaring the Defendant's conduct violates the causes of action referenced herein;

C.     For an order finding in favor of Plaintiff and the Classes on all counts asserted herein;

D.     For compensatory, statutory, and punitive damages in amounts to be determined by the Court and/or jury;

E.     For prejudgment interest on all amounts awarded;

F.     For an order of restitution and all other forms of equitable monetary relief;

G.    For injunctive relief as pleaded or as the Court may deem proper; and

H.    For an order awarding Plaintiff and the Classes their reasonable attorneys' fees and expenses and costs of suit.

## <u>DEMAND FOR JURY TRIAL</u>

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands a trial by jury of any and all claims in this Complaint and of any and all issues in this action so triable as of right.

Dated: July 28, 2023               By: */s/ Eric M. Poulin*

**POULIN | WILLEY | ANASTOPOULO, LLC**

Eric M. Poulin (California State Bar No. 298476)

*eric.poulin@poulinwilley.com*

Blake G. Abbott (*Pro Hac Vice* Forthcoming)

*blake.abbott@poulinwilley.com*

Paul J. Doolittle (*Pro Hac Vice* Forthcoming)

*paul.doolittle@poulinwilley.com*

32 Ann Street

Charleston, SC 29403

Telephone: (803) 222-2222

Fax: (843) 494-5536

*Attorneys for Plaintiff Hannah Bui and The Putative Class*

CLASS ACTION COMPLAINT