**POULIN | WILLEY | ANASTOPOULO, LLC**
Eric M. Poulin (California State Bar No. 298476)
*eric.poulin@poulinwilley.com*
Blake G. Abbott (*Pro Hac Vice*)
*blake.abbott@poulinwilley.com*
Paul J. Doolittle (*Pro Hac Vice*)
*paul.doolittle@poulinwilley.com*
32 Ann Street
Charleston, SC 29403
Telephone: (803) 222-2222
Fax: (843) 494-5536

**BOHREN LAW**
John C. Bohren (California State Bar No. 295292)
8560 West Sunset Boulevard, 4th Floor
West Hollywood, CA 90069
Telephone: (619) 433-2803
Fax: (800) 867-6779

*Attorneys for Plaintiffs and The Putative Class*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE CENTRAL DISTRICT OF CALIFORNIA**
**WESTERN DIVISION**

Hannah Bui and Matthew Hurtado, Individually and on Behalf of All Others Similarly Situated,

Plaintiffs,

v.

Zuru, LLC,

Defendant.

**Case No.: 2:23-cv-06125-FMO-MRW**

**PLAINTIFFS' OPPOSITION TO DEFENDANT'S RENEWED MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT**

**Date: May 16, 2024**
**Time: 1:30 p.m.**
**Courtroom: 10B**
**Before: Judge Monica Ramirez Almadani**

## TABLE OF CONTENTS

**I. INTRODUCTION .......... 1**

**II. LEGAL STANDARD .......... 6**

**III. ARGUMENT .......... 8**

**A. PLAINTIFFS HAVE STANDING .......... 8**

1. Plaintiffs have adequately alleged injury from Defendant's dangerous product. .......... 9

2. Plaintiffs do not lack standing to pursue individual or class wide injunctive relief because they concede that they would not purchase the dangerous product again. .......... 13

3. A prudential mootness finding is not warranted. .......... 14

**B. PLAINTIFFS FIRST AMENDED COMPLAINT ADEQUATELY STATES CLAIMS UPON WHICH RELIEF MAY BE GRANTED .......... 16**

1. Plaintiffs have adequately pled a claim for unjust enrichment. .......... 16

2. Plaintiffs' claims for strict liability, negligence, and fraudulent concealment are not barred by California's economic loss doctrine. .......... 18

3. Plaintiffs plead fraudulent concealment with particularity. .......... 22

**IV. CONCLUSION .......... 23**

# TABLE OF AUTHORITIES

## CASES

*Astiana v. Hain Celestial Grp., Inc.*, 783 F.3d 753 (9th Cir. 2015) ..................... 21

*Barrier Specialty Roofing & Coatings, Inc. v. ICI Paints N. Am., Inc.*, No. CV F 07-1614 LJOTAG, 2008 WL 2724876 (E.D. Cal. July 11, 2008) ..................... 22

*Bell Atlantic Corp. v. Twombly*, 550 US 544, 127 S.Ct. 1964 (2007) ..................... 10

*Bret Harte Union High Sch. Dist. v. FieldTurf, USA, Inc.*, No. 116CV00371DADSMS, 2016 WL 3519294 (E.D. Cal. June 27, 2016) ..................... 23, 24

*Broam v. Bogan*, 320 F3d 1023 (9th Cir. 2003) ..................... 11

*Colley v. Vierra*, NO. CV 19-1988-FMO (AGR) (C.D. Cal. Mar. 12, 2020) ..................... 11

*County of San Bernardino v. Walsh*, 158 Cal. App. 4th 533, 69 Cal. Rptr. 3d 848 (2007) ..................... 21

*DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, (2006) ..................... 11

*Edwards v. FCA US* LLC, 2022 WL 1814144 (N.D. Cal. June 2, 2022) ..................... 24

*Erickson v. Pardus* 551 U.S. 89, 127 S.Ct. 2197, 167 L. Ed. 2d 1081 (2007) ..................... 10

*Erlich v. Menezes*, 981 P.2d 978 (Cal. 1999) ..................... 22, 23

*Flier v. FCA US LLC*, No. 21-CV-02553-CRB, 2022 WL 16823042 (N.D. Cal. Nov. 8, 2022) ..................... 23

*Jonathan Chuang v. Dr. Pepper Snapple Grp., Inc.*, 2017 WL 4286577 (C.D. Cal. Sept. 20, 2017) ..................... 21

*Lectrodryer v. SeoulBank*, 77 Cal. App. 4th 723, 91 Cal. Rptr. 2d 881 (2000) ..................... 20

*Leon v. Continental AG*, 301 F. Supp. 3d 1203 (S.D. Fla. 2017) ..................... 18

*Lorentzen v. Kroger Co.*, No. 2:20-CV-06754-SB-RAO, 2021 WL 1573719 (C.D. Cal. Apr. 2, 2021) ..................... 25

*Lormand v. US Unwired, Inc.* 565 F3d 228 (5th Cir. 2009) ..................... 11

*Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992) ..................... 11, 12

*Maree v. Deutsche Lufthansa AG*, No. SACV20885, 2021 WL 267853 (C.D. Cal. Jan. 26, 2021) .......... 18

*Navarro v. Block*, 250 F.3d 729 (9th Cir. 2001) .......... 10

*Oceguera v. Baby Trend, Inc.*, No. 521CV00398JWHKKX, 2022 WL 1599869 (C.D. Cal. Jan. 14, 2022) .......... 17, 22

*Philips v. Ford Motor Co.*, No. 14-2989, 2016 WL 693283 (N.D. Cal. Feb. 22, 2016) .......... 18

*Robinson Helicopter Co., Inc. v. Dana Corp.*, 34 Cal. 4th 979 (2004) .......... 24

*Sater v. Chrysler Grp*. LLC, No. 14-700, 2014 WL 11412674 (C.D. Cal. Oct. 7, 2014) .......... 18

*Shum v. Intel Corp.*, 499 F.3d 1272, (9th Cir. 2007) .......... 21

*Starr v. Baca* (9th Cir. 2011) 652 F3d 1202 .......... 10

*Van de Kamp v. Bank of Am.*, 204 Cal. App. 3d 819, 251 Cal. Rptr. 530 (1988) .......... 20

*Wheeler v. BMW of North America LLC*, — F. Supp. 3d —, 2021 WL 1399695 (W.D.N.C. Apr. 14, 2021) .......... 24

*Whittington v. KidsEmbrace, LLC*, 2021 WL 3076646 (C.D. Cal. July 19, 2021) .......... 21, 23, 26

*Winzler v. Toyota Motor Sales U.S.A. Inc.*, 681 F.3d 1208 (10th Cir. 2012) .......... 18

**<u>RULES</u>**

Fed. R. Civ. P. 12(b)(1) .......... 11

Fed. R. Civ. P. 8(d)(2) .......... 21

Fed. R. Civ. P. 9(b) .......... 25

Fed. R. Civ. P. 12(b)(6) .......... 10

## I. INTRODUCTION

Plaintiffs Hannah Bui and Matthew Hurtado (collectively "Plaintiffs"), individually and on behalf of all others similarly situated, filed an Amended Class Action Complaint against Zuru, LLC ("Zuru" or "Defendant") on October 6, 2023. *See* Dkt. No. 26. On November 3, 2023, Defendant filed a Motion to Dismiss. *See* Dkt. No. 29. On March 6, 2024, Defendant filed a renewed Motion to Dismiss. *See* Dkt. No. 52. Plaintiffs hereby submit this response to Defendant's renewed Motion to Dismiss.

Zuru is a well-established and profitable corporation known for its production, distribution, and importation of toy products, including the Pinkfong Baby Shark Products at hand.[1] Zuru is a self-proclaimed award-winning brand that is "inspired by the limitless possibilities of kids' imaginations, Zuru is a company devoted to reimagining what it means to play."[2] The Products at hand are toys made for children that resemble characters from a notable children's show and music video, Baby Shark.[3] Baby Shark is immensely popular with children, having

[1] https://www.playgroundequipment.com/how-much-20-major-toy-brands-made-in-2020/
[2] https://Zurutoys.com/
[3] https://www.cpsc.gov/Recalls/2023/Zuru-Recalls-7-5-Million-Baby-Shark-and-MiniBaby-Shark-Bath-Toys-With-Hard-Plastic-Top-Fins-Due-to-Risk-of-Impalement-Lacerationand-Puncture-Injuries-to-Children

nearly as many views as there are people on Earth, at roughly **7 billion views**.[4] (emphasis added).

Zuru designed, manufactured, distributed, and sold the products Robo Alive Junior Baby Shark Sing & Swim Bath Toys and Robo Alive Junior Mini Baby Shark Swimming Bath Toys (collectively "the Toys"). Dkt. No. 26, ¶ 1 – 2. Zuru markets itself as an award-winning manufacturer of children's toys. *Id.*, at ¶¶ 22 – 24. Consumers expect, when they purchase products from Zuru, they are purchasing a safe product. *Id.*, at ¶ 28. This is especially true of the Toys Zuru produces as they are designed for children. (see below) *Id.*, at ¶¶ 25, 27.




Unfortunately, Defendant's Toys are unsafe, knife-like products. *Id.*, at ¶ 28. The Toys expose consumers to dangerous sharp, jagged, and pointed edges with firm support. *Id.*, at ¶ 29. As a result of the risk of impalement, Plaintiffs, and all

[4] https://www.billboard.com/pro/baby-shark-goes-viral-timeline/

others similarly situated, were deprived the basis of their bargain given that Defendant sold them a product containing sharp edges that are supported by hard plastic. This dangerous impalement risk inherent to the Products renders them unmerchantable and unfit for their normal intended use. *Id.*, at ¶ 28.

Defendant's arguments misinterpret the FAC in its entirety and the allegations made within. Plaintiffs' FAC centers around the severity of the risk that Defendant's toys posed to parents and their newborn children. Defendant claims its recall is sufficient, but this Court need look no further than the recall notice itself to see that this is an insufficient argument. Defendant's recall notice states: "When using the recalled bath toys, particularly in a bathtub or wading pool, a child can slip and fall or sit onto the hard plastic top fin of the shark, posing risks of impalement, lacerations and punctures."[5] The notice further states: "Zuru is aware of 12 reports of children falling or sitting onto the recalled full-size Baby Shark bath toy, resulting in impalement injuries, lacerations and puncture wounds, including to children's genital, anorectal and facial areas. Nine of the incidents required stitches or medical attention."[6] These statements alone make clear that the toys were inherently unsafe for children given the foreseeability that these toys

[5] https://www.cpsc.gov/Recalls/2023/Zuru-Recalls-7-5-Million-Baby-Shark-and-Mini-Baby-Shark-Bath-Toys-With-Hard-Plastic-Top-Fins-Due-to-Risk-of-Impalement-Laceration-and-Puncture-Injuries-to-Children

[6] *Id.*

would be used in the bathtub—the packaging clearly states that the toys are "water activated!" FAC ¶ 27.

First, even with a recall, Plaintiffs adequately allege a cognizable injury sufficient to confer standing: they paid to purchase Defendant's defective and worthless products that expose consumers to dangerous sharp, jagged, and pointed edges, as a result of such defective product, Plaintiffs suffer and continue to suffer financial damages and injury, including but not limited to, the cost of the defective product, loss of use of the product and other related damages. Here, Plaintiffs allege that they would not have purchased the products had Defendant properly disclosed the true dangerous nature. FAC ¶ 34, 43. That allegation sufficiently constitutes an allegation of an injury in fact and conveys Article III standing. *See Baby Trend*, No. 521CV00398JWHKKX, 2022 WL 1599869, at *4 (denying defendant's motion to dismiss with regard to standing) Thus, Plaintiffs maintain standing for their injunctive relief claims.

Second, the prudential mootness doctrine does not apply because Plaintiffs have a cognizable claim for monetary damages and seek declaratory and injunctive relief, incidental, consequential, and other damages and other legal and equitable relief. FAC ¶¶ 29, 58, 106, 139, 151, 161, 167, (*see also* Plaintiffs' Prayer for Relief, FAC p. 27.)

Third, Plaintiffs have adequately pled a claim for unjust enrichment. Case law clearly indicates that adjudication of unjust enrichment claims is proper. *See, e.g., County of San Bernardino v. Walsh*, 158 Cal. App. 4th 533, 542-43, 69 Cal. Rptr. 3d 848 (2007) (upholding damages award based on unjust enrichment claim); *Lectrodryer*, 77 Cal. App. 4th at 726 (recognizing unjust enrichment claims); *see also Shum v. Intel Corp*., 499 F.3d 1272,1279 (9th Cir. 2007) (recognizing unjust enrichment as a "separate claim" under California law). As such, Plaintiffs unjust enrichment claim should stand.

Additionally, Plaintiffs can state a claim for quasi-contract in the alternative. While Defendant argues that Plaintiffs recognize that Zuru is providing a refund and thus cannot state a plausible claim for quasi-contract, the bargain between the parties required that the toys Defendant sold were safe for Plaintiffs and their children and they were not. Plaintiffs have therefore stated a claim for quasi-contract and leave to amend should be granted.

Fourth, Plaintiffs' claims for strict liability, negligence, and fraudulent concealment are not barred by California's economic loss doctrine because the duty that gives rise to tort liability took place prior to the formation of the contract (misrepresentations and omissions made by Defendant to induce Plaintiffs to enter the contract), that duty is both "completely independent of the contract and arises

from conduct which is both intentional and intended to cause harm." *Erlich v. Menezes*, 21 Cal. 4th 543, 552, 981 P.2d 978, 983 (1999).

Fifth, Plaintiffs' fraudulent concealment claim is not barred by the economic loss doctrine. The weight of decisional law in California holds that a fraudulent concealment claim is not barred, particularly where, as here, the claim being asserted is that Plaintiffs, and similarly situated consumers, were induced to purchase the toys based on the material omissions made by Zuru. *See, Flier v. FCA US LLC*, *supra* at *6; *Whittington v. KidsEmbrace*, LLC, 2021 WL 3076646, at *6 (C.D. Cal. July 19, 2021).

And lastly, because Plaintiffs sufficiently alleged the when and where of the fraud as it pertained to them, as well as the who, what and how, Rule 9(b) provides no basis for dismissing their claims sounding in fraud.

Because Plaintiffs pled viable theories of harm on behalf of themselves and the Class and subclass, their claims for unjust enrichment, breach of express warranty, breach of implied warranty, breach of the implied warranty of merchantability, fraudulent concealment, failure to warn, design defect, negligent failure to warn, negligent design defect, and negligence. Accordingly, this Court should deny Defendant's motion to dismiss.

## II. LEGAL STANDARD

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the claims asserted in a complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir.

2001). A complaint is sufficient if it gives the defendant "fair notice of what the ... claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly* (2007) 550 US 544, 555, 127 S.Ct. 1955, 1964 (internal quotes omitted); *Starr v. Baca* (9th Cir. 2011) 652 F3d 1202, 1212. In determining the sufficiency of a pleading, allegations of material fact are taken as true and construed in the light most favorable to the pleader. *Erickson v. Pardus* 551 US 89, 94, 127 S.Ct. 2197, 2200, 167 L. Ed. 2d 1081 (2007); *Silvas v. E*Trade Mortg. Corp*. (9th Cir. 2008) 514 F3d 1001, 1003-1004. Traditionally, however, courts have viewed with "disfavor" motions to dismiss under Rule 12(b)(6) because of the lesser role pleadings play in federal practice and the liberal policy regarding amendment. *Lormand v. US Unwired, Inc*. 565 F3d 228, 232 (5th Cir. 2009) (Rule 12(b)(6) motions "viewed with disfavor and rarely granted."); *Broam v. Bogan,* 320 F3d 1023, 1028, (9th Cir. 2003) (Rule 12(b)(6) dismissal with prejudice proper only in "extraordinary" cases). As stated by Judge Fernando M. Olguin, "The Court disfavors piecemeal motions to dismiss a complaint." *Colley v. Vierra*, NO. CV 19-1988-FMO (AGR), 2 (C.D. Cal. Mar. 12, 2020).

As the party seeking to invoke the federal court's jurisdiction, Plaintiffs have the burden of alleging specific facts sufficient to prove Article III standing. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992). When a party lack standing, the Federal Rules of Civil Procedure allow a party to move for dismissal based

upon lack of subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). Plaintiffs bear the burden of demonstrating standing "for each claim" and "for each form of relief" that they seek. *See DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 342, 352 (2006) (internal citations and quotations omitted). The Court should dismiss an action when the face of the complaint does not demonstrate a basis for standing. *See Warren v. Fox Family Worldwide, Inc.*, 328 F.3d 1136, 1139 (9th Cir. 2003); Fed. R. Civ. P. 8(a) & 12(b)(1).

## III. ARGUMENT

### A. PLAINTIFFS HAVE STANDING

Standing under Article III requires three elements. First, Plaintiffs must suffer an "injury in fact," which means that there must be a concrete and particularized "invasion of a legally protected interest" that is actual or imminent. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). Second, Plaintiffs must allege a causal connection between the injury and the conduct complained of, which means that the injury must be "fairly traceable" to Defendants' actions. *Id.* Third, Plaintiffs must show that a favorable decision will likely redress the injury. *Id.* at 561. Although Plaintiffs bear the burden of establishing standing, "general factual allegations of injury resulting from the defendant's conduct may suffice" at the pleading stage. *Id.*

### 1. Plaintiffs have adequately alleged injury from Defendant's dangerous product.

Defendant argues that Plaintiffs fail to allege any injury from the Baby Shark product or that they lacked an opportunity to receive a refund and thus lack Article III standing to pursue their claims. Dkt. 52-1, p. 11-14. However, "Various courts in the Ninth Circuit agree that if the Court were to construe Article III standing as narrowly as Defendant advocates, federal courts would be precluded from enjoining false advertising [or other deceptive conduct] under California consumer laws because a plaintiff who had been injured would always be deemed to avoid the cause of the injury thereafter…and would never have Article III standing." *Oceguera v. Baby Trend, Inc*., 2022 WL 1599869, at *5 (C.D. Cal. Jan. 14, 2022) (internal quotation marks omitted) (collecting cases). "To deny Plaintiffs standing for injunctive relief would eviscerate the intent of the California legislature in creating consumer protection statutes because it would effectively bar any consumer who avoids the offending product from seeking injunctive relief." *Id*.

To support its argument, Defendant cites to inapposite cases. First, Defendant cites *Polo v. Innoventions Int'l, LLC*, 833 F.3d 1193 (9th Cir. 2016), as holding that a "plaintiff bringing consumer claim lacked Article III standing because money had been refunded)"; when in fact, it was actually the district court that reached that conclusion, and that holding was not challenged on appeal. The

circuit court addressed only whether the case should have been remanded to state court or dismissed. The district court held that Polo lacked standing for her claims because of her admissions that she is not diabetic and that she stopped taking her diabetes prescriptions at least five months before seeing ads for DiabeStevia, which foreclosed her from proving the injury she alleged and from proving causation. *Elsa Polo v. Innoventions Int'l LLC*, No. CV 13-830-ABC RNBX, 2014 WL 1778944, at *4 (C.D. Cal. May 1, 2014), rev'd and remanded sub nom. *Polo v. Innoventions Int'l, LLC*, 833 F.3d 1193 (9th Cir. 2016). Such is not the case here.

Defendant also describes the holding in *Arabian Am. Oil Co. v. Scarfone,* 713 F. Supp. 1420, 1423 (M.D. Fla. 1989), as "no standing where plaintiff received reimbursement"; in fact, that case did not involve Article III standing at all, but rather whether the plaintiff suffered the injury required by the civil RICO statute, 18 U.S.C. § 1964(c). In *Arabian Am. Oil Co*., the plaintiff sued Lee Scarfone and his business, alleging breach of contract, fraud, violations of federal and state racketeering statutes ("RICO"), 18 U.S.C. § 1961 *et seq.;* Fla.Stat. § 895.01 *et seq.,* and the Florida civil theft statute, Fla.Stat. § 812.035. The Middle District of Florida found that because plaintiff was given reimbursement of Scarfone's overcharges, it suffered no injury **for the purposes of the statutes in question**. (emphasis added). *Arabian Am. Oil Co. v. Scarfone*, 713 F. Supp. 1420, 1423

(M.D. Fla. 1989). None of the statutes in *Arabian Am. Oil Co*. are at play in the present case and therefore that case is not relevant or persuading.

*Savoy* is also inapposite. Defendant cites *Savoy*, claiming that "where plaintiff was entitled to, but did not take advantage of, the defendant's satisfaction guarantee which offered a full refund he could not "clearly and sufficiently allege injury". *Savoy v. Collectors Universe, Inc*., No. SACV2000632DOCADS, 2020 WL 4938464, at *5 (C.D. Cal. July 21, 2020). However, *Savoy* differs from the present case because there, the court reasoned that plaintiff's allegation that he has suffered injury as a result of defendants' purported failure to stand by their *satisfaction guarantee* is vague and speculative and fails to satisfy the standing requirement that facts giving rise to injury be pleaded concretely and particularly. *Id*. at *4. Here, the Plaintiffs have made no such allegation.

*Sugasawara* should similarly not be relied on. Defendant claims that *Sugasawara* supports its argument that Plaintiffs do not have standing because "The Sugasawara court granted dismissal because a product recall provided an adequate remedy, noting that 'Plaintiffs have not plausibly alleged that Ford's recall remedy [which involved a repair] will fail to cure the Defect.'" Dkt. 52-1, p. 13; *Sugasawara v. Ford Motor Co*., No. 18-CV-06159-LHK, 2019 WL 3945105, at *5 (N.D. Cal. Aug. 21, 2019). However, in *Sugasawara*, the plaintiffs did not allege that the defect manifested in their vehicles. *Id*. Here, Plaintiffs were both

victims of Defendant's recall and purchased the recalled products. FAC ¶ 1. Therefore, *Sugasawara* is not instructive.

Lastly, Defendant skews the findings of *Cain*. The court in *Cain* stated: "The first and most obvious problem with the Complaint is that, for all its allegations regarding the presence of the Defect in the Products purchased by other individuals, Plaintiff never specifically alleges that she even used her treadmill, let alone that the Defect manifested in it." *Cain v. Johnson Health Tech. N. Am., Inc.*, No. EDCV 23-195 JGB (KKx), 2023 U.S. Dist. LEXIS 109026, at *14 (C.D. Cal. Jun. 23, 2023). Here, Plaintiffs have alleged that they purchased **and** used the recalled Products. FAC ¶ 14, 35, 41, 98. As such, *Cain* cannot be relied upon.

Clearly, here, the above cases do not have any weight as to Plaintiffs' standing.

Here, even with a recall, Plaintiffs adequately allege a cognizable injury sufficient to confer standing: they paid to purchase Defendant's defective and worthless products that expose consumers to dangerous sharp, jagged, and pointed edges, as a result of such defective product, Plaintiffs suffer and continue to suffer financial damages and injury, including but not limited to, the cost of the defective product, loss of use of the product and other related damages. FAC ¶¶ 61, 75, 102. Plaintiffs and each of the members of the Classes would not have purchased the Products had they known the true nature of the risk of the Product impaling or

cutting those who used the Products. FAC ¶ 74. Thus, Plaintiff has established an injury in fact that is sufficiently impending to support Article III standing. *See In re Mattel, Inc. Toy Lead Paint Products Liability Litigation*. 588 F. Supp. 2d 1111, 1114 (C.D. Cal. 2008) (standing conferred by a claim that plaintiffs purchased unsafe and unusable toys for which they want a refund); *See also, Sanchez v Wal-Mart Stores, Inc*., 2:06CV2573 JAM KJM, 2008 WL 3272101, at *2-3 (E.D. Cal. Aug. 6, 2008) (finding standing where even though Plaintiff "never was physically injured by her stroller" and "she never had a problem with her stroller.")

**2. Plaintiffs do not lack standing to pursue individual or class wide injunctive relief because they concede that they would not purchase the dangerous product again.**

Plaintiffs assert that if the products and packaging were reformulated to be safe and avoid impalement, Plaintiffs would choose to purchase the products again in the future. FAC ¶ 39, 45. Such allegations set forth a claim for injunctive relief. Alternatively, "plaintiffs have standing to seek injunctive relief based on the allegation that a product's labeling or marketing is misleading to a reasonable consumer." *Ackerman v. Coca-Cola Co*., 2013 WL 7044866, at *15 (E.D.N.Y. July 18, 2013). Even where a plaintiff does not allege he intends to make another purchase of the product in question, plaintiff still maintains standing to sue for injunctive relief. *Id*. (citation omitted); *Koehler v. Litehouse, Inc*., 2012 WL 6217635, at *6 (N.D. Cal. Dec.13, 2012). Here, Plaintiffs allege that they would

not have purchased the products had Defendant properly disclosed the true dangerous nature. FAC ¶ 34, 43. That allegation sufficiently constitutes an allegation of an injury in fact and conveys Article III standing. *See Oceguera v. Baby Trend, Inc.*, No. 521CV00398JWHKKX, 2022 WL 1599869, at *4 (C.D. Cal. Jan. 14, 2022) (denying defendant's motion to dismiss with regard to standing) Thus, Plaintiffs maintain standing for their injunctive relief claims.

**3. A prudential mootness finding is not warranted.**

Defendant argues that alternatively or in addition, prudential mootness warrants dismissal of Plaintiffs' FAC given the existence of the CPSC recall and refund. Dkt. 52-1, p. 17-20. If Plaintiffs are entitled to a refund, the question remains whether Defendant issued a refund that was of appropriate value compared to the loss suffered by Plaintiffs. *See, e.g., Maree v. Deutsche Lufthansa AG*, No. SACV20885, 2021 WL 267853, at *1 (C.D. Cal. Jan. 26, 2021) (holding that passenger had standing to bring claim for damages...because loss of the use of one's money constitutes a concrete and redressable injury). Further, a manufacturer's voluntary recall does not render consumers' claims moot where, as here, the claims seek relief beyond what a recall can provide.

Courts have concluded that a recall under the supervision of federal agency, like the CPSC, renders a case prudentially moot only where it has already begun the process of affording consumers all of the relief being sought in a suit, and the

suit does not seek additional monetary damages that the recall cannot provide. *See Sater v. Chrysler Grp*. LLC, No. 14-700, 2014 WL 11412674, at *5 (C.D. Cal. Oct. 7, 2014) (holding that recall did not render suit prudentially moot where the plaintiff sought more than merely "new parts to replace defective ones," but also sought "lost use of the Class Vehicles caused by the defect, and diminished resale value due not to a defective part but negative publicity about the Class Vehicles"); *Leon v. Continental AG*, 301 F. Supp. 3d 1203, 1219-20 (S.D. Fla. 2017); *Philips v. Ford Motor Co*., No. 14-2989, 2016 WL 693283, at *8 (N.D. Cal. Feb. 22, 2016).

Defendant mistakenly relies on *Winzler v. Toyota Motor Sales U.S.A. Inc*., 681 F.3d 1208, 1209 (10th Cir. 2012), which held that an auto manufacturer's recall rendered the case prudentially moot. But as *Winzler* makes clear, the recall in that case only rendered the action prudentially moot because it afforded the plaintiffs all of the relief sought, which was "an order requiring Toyota to notify all relevant owners of the defect and then to create and coordinate an equitable fund to pay for repairs." *Id*. While the case was on appeal to the Tenth Circuit, Toyota announced a voluntary recall of the vehicles at issue. *Id*. The Tenth Circuit concluded that this rendered the case prudentially moot because the recall process would require Toyota "to notify all registered owners of the defect," and therefore, provide the full relief requested. *Id*. at 1211. That clearly does not apply here. Plaintiffs have a

cognizable claim for monetary damages and seek declaratory and injunctive relief, incidental, consequential, and other damages and other legal and equitable relief. FAC ¶¶ 29, 58, 106, 139, 151, 161, 167, (*see also* Plaintiffs' Prayer for Relief, FAC p. 27.)

### B. PLAINTIFFS FIRST AMENDED COMPLAINT ADEQUATELY STATES CLAIMS UPON WHICH RELIEF MAY BE GRANTED

#### 1. Plaintiffs have adequately pled a claim for unjust enrichment.

Defendant argues that Plaintiffs' Count I for unjust enrichment must be dismissed because California does not recognize an independent cause of action for unjust enrichment. Dkt. 52-1, p. 20. However, Plaintiffs' allegations meet the elements of an unjust enrichment claim. Unjust enrichment is properly asserted when a Defendant receives a benefit and unjustly retains that benefit at the expense of another. *See Lectrodryer v. SeoulBank*, 77 Cal. App. 4th 723, 726, 91 Cal. Rptr. 2d 881 (2000); *Van de Kamp v. Bank of Am*., 204 Cal. App. 3d 819, 855, 251 Cal. Rptr. 530 (1988) ("Unjust enrichment 'presupposes the acceptance and retention of a benefit by one party with full appreciation of the facts, under circumstances making it inequitable for the benefit to be retained without payment of the reasonable value thereof.").

Plaintiffs allege that (1) Plaintiffs conferred benefits on Defendant in the form of monies paid to purchase Defendant's defective and worthless products; (2) in exchange, Plaintiffs received mislabeled products that were not what Plaintiffs and the Classes bargained for and were not safe and effective; and (3) Defendant has been unjustly enriched in retaining the revenues derived from the purchases of the products by Plaintiffs and the other members of the Classes. FAC ¶¶ 61, 64, 65. Retention of those monies under these circumstances is unjust and inequitable because Defendant's labeling of the Products was misleading to consumers, which caused injuries to Plaintiffs, and members of the Classes, because they would have not purchased the Products had they known the true facts. *Id*.

Defendant's assertion that Plaintiffs' unjust enrichment claim should be dismissed because it is not an independent claim under California law is false. To the contrary, case law clearly indicates that adjudication of unjust enrichment claims is proper. *See, e.g., County of San Bernardino v. Walsh*, 158 Cal. App. 4th 533, 542-43, 69 Cal. Rptr. 3d 848 (2007) (upholding damages award based on unjust enrichment claim); *Lectrodryer*, 77 Cal. App. 4th at 726 (recognizing unjust enrichment claims); *see also Shum v. Intel Corp.*, 499 F.3d 1272,1279 (9th Cir. 2007) (recognizing unjust enrichment as a "separate claim" under California law). As such, Plaintiffs unjust enrichment claim should stand.

Additionally, Plaintiffs can state a claim for quasi-contract in the alternative.

"A claim for ... quasi-contract cannot lie where the plaintiff has received the benefit of the alleged bargain." *Jonathan Chuang v. Dr. Pepper Snapple Grp., Inc.*, 2017 WL 4286577, at *8 (C.D. Cal. Sept. 20, 2017); *Whittington v. KidsEmbrace, LLC*, 2021 WL 3076646 at *5 (C.D. Cal. July 19, 2021) (denying motion to dismiss quasi-contract claim); *See* Fed. R. Civ. P. 8(d)(2); *Astiana v. Hain Celestial Grp., Inc.*, 783 F.3d 753, 762-63 (9th Cir. 2015) ("To the extent the district court concluded that the [quasi-contact] cause of action was nonsensical because it was duplicative of or superfluous to Astiana's other claims, this is not grounds for dismissal.").

Here, Defendant argues that Plaintiffs recognize that Zuru is providing a refund and thus cannot state a plausible claim for quasi-contract. Dkt. 52-1, p. 21. However, the bargain between the parties required that the toys Defendant sold were safe for Plaintiffs and their children and they were not. Plaintiffs have therefore stated a claim for quasi-contract and leave to amend should not be denied. *See Oceguera v. Baby Trend, Inc.*, No. 521CV00398JWHKKX, 2022 WL 1599869, at *8 (C.D. Cal. Jan. 14, 2022) (finding that plaintiffs stated a claim for quasi-contract because the bargain required that the toys defendant sold were safe for plaintiffs' children.).

**2. Plaintiffs' claims for strict liability, negligence, and fraudulent concealment are not barred by California's economic loss doctrine.**

Defendant similarly and erroneously argues that Plaintiffs' claims for strict liability, negligence and fraudulent concealment are barred by the economic loss doctrine under California law. Dkt. 52-1, p. 21-23. There are, however, exceptions to the economic loss rule. It does not apply when "the duty that gives rise to tort liability is either completely independent of the contract or arises from conduct which is both intentional and intended to harm." *Id.* at 990 (citing *Erlich v. Menezes*, 981 P.2d 978, 990 (Cal. 1999) (emphasis added)). The doctrine also does not apply when: "(1) the breach is accompanied by a traditional common law tort, such as fraud or conversion; (2) the means used to breach the contract are tortious, involving deceit or undue coercion; or (3) one party intentionally breaches the contract intending or knowing that such a breach will cause severe, unmitigable harm in the form of mental anguish, personal hardship, or substantial consequential damages." *Id.* (citation omitted); *see also Barrier Specialty Roofing & Coatings, Inc. v. ICI Paints N. Am., Inc.*, No. CV F 07-1614 LJOTAG, 2008 WL 2724876, at *6 (E.D. Cal. July 11, 2008) (misrepresentation claim based on misrepresentation of past or existing material facts not barred by Economic Loss Rule); *Bret Harte Union High Sch. Dist. v. FieldTurf, USA, Inc.*, No. 116CV00371DADSMS, 2016 WL 3519294, at *5 (E.D. Cal. June 27, 2016) (Where "claim sounds more in deceit/fraud than it does in negligence" not barred by Economic Loss Rule).

Here, because the duty that gives rise to tort liability took place prior to the formation of the contract (misrepresentations and omissions made by Defendant to induce Plaintiffs to enter the contract), that duty is both "completely independent of the contract and arises from conduct which is both intentional and intended to cause harm." *Erlich v. Menezes*, 21 Cal. 4th 543, 552, 981 P.2d 978, 983 (1999). As such, Plaintiffs' Count VI, VII, VIII, IX, and X are not barred under the economic loss rule.

Lastly, Plaintiffs' fraudulent concealment claim is not barred by the economic loss doctrine. The weight of decisional law in California holds that a fraudulent concealment claim is not barred, particularly where, as here, the claim being asserted is that Plaintiffs, and similarly situated consumers, were induced to purchase the toys based on the material omissions made by Zuru. *See, Flier v. FCA US LLC*, No. 21-CV-02553-CRB, 2022 WL 16823042, at *6 (N.D. Cal. Nov. 8, 2022); *Whittington v. KidsEmbrace*, LLC, 2021 WL 3076646, at *6 (C.D. Cal. July 19, 2021) ("[W]ith respect to the economic loss rule, the Court concludes that the rule does not apply to Plaintiff's fraud, negligent misrepresentation, and UDTPA claims") (collecting cases); *see, Bret Harte Union High Sch. Dist. v. FieldTurf, USA*, Inc., 2016 WL 3519294, at *4 (E.D. Cal. June 27, 2016) (plaintiffs may recover "'where the contract was fraudulently induced.' ") (citing *Robinson Helicopter Co., Inc. v. Dana Corp.*, 34 Cal. 4th 979, 989 (2004) (emphasis in

original)); *Edwards v. FCA US* LLC, 2022 WL 1814144 *7 (N.D. Cal. June 2, 2022); *see also, Wheeler v. BMW of North America LLC*, — F. Supp. 3d —, 2021 WL 1399695, at * 3-4 (W.D.N.C. Apr. 14, 2021) (concluding that plaintiff's fraudulent concealment and UDTPA claims survive at the motion to dismiss stage where plaintiff's claims relate to the inducement of the purchase and stating, in relevant part, "[w]hile the economic loss rule generally bars claims for economic loss stemming from breach of contractual obligations, the rule does not extend to torts based on an independent duty that is 'identifiable' and 'distinct' from the breach of contract claim.").

Here, Zuru's misrepresentations and omissions are actionable, as pled in Plaintiffs' First Amended Complaint. FAC, p. 9. Defendant engaged in fraudulent, unfair, deceptive, misleading, and/or unlawful conduct stemming from its omissions surrounding the risk of impalement affecting the Products. FAC ¶ 31. Defendant failed to discharge its duty to disclose the material facts regarding the dangerous products. FAC ¶¶ 109, 111. In so failing to disclose these material facts to Plaintiffs and the Classes, Defendant intended to hide from Plaintiffs and the Classes that they were purchasing and consuming the products with harmful defects that was unfit for human use, and thus acted with scienter and/or an intent to defraud. FAC ¶ 112. Plaintiffs and the Classes reasonably relied on Defendant's failure to disclose insofar as they would not have purchased the defective products

manufactured and sold by Defendant had they known they possessed this risk of impalement. FAC ¶ 113. It is wholly false to claim that Plaintiffs' "only alleged damage is to the product itself for failing to perform up to Plaintiffs' expectations." Dkt. 52-1, p. 24. Thus, the economic loss doctrine does not bar any of Plaintiffs' claims.

**3. Plaintiffs plead fraudulent concealment with particularity.**

Defendant further argues that even if Plaintiffs' fraudulent concealment cause of action satisfies California's economic loss rule, Plaintiffs' allegations lack the requisite specificity to state a claim. Dkt. 52-1, p. 24. Federal Rule of Civil Procedure 9(b) states that an allegation of "fraud or mistake must state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). The "circumstances" required by Rule 9(b) are the "who, what, when, where, and how" of the fraudulent activity. *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003); *Neubronner v. Milken*, 6 F.3d 666, 672 (9th Cir. 1993).

Plaintiffs, however, satisfied Rule 9(b)'s requirement that they plead fraud with "particularity" because they alleged the "who, what, when, where and how" of the alleged fraud. *Lorentzen v. Kroger Co.*, No. 2:20-CV-06754-SB-RAO, 2021 WL 1573719, at *2 (C.D. Cal. Apr. 2, 2021). Plaintiffs identify the perpetrator of the fraud ("who"), FAC ¶ 31, 114; their places of residence ("where"), *id.* ¶¶ 10, 13; detail the "what" and the "how" of Defendant's fraud, *id.* ¶¶ 107-115; and

adequately allege the "where" and "when" by describing the nationwide marketing scheme, *id*. ¶ 23-27, and the date and location of Plaintiffs' exposure to the fraud and purchase of the products. *id*. ¶¶ 11, 12.

Because Plaintiffs sufficiently alleged the when and where of the fraud as it pertained to them, as well as the who, what and how, Rule 9(b) provides no basis for dismissing their claims sounding in fraud. *See Lorentzen v. Kroger Co*., 532 F. Supp. 3d 901, 910 (C.D. Cal. 2021) (finding fraud claim survives 9(b) where plaintiff alleges "the who (Defendant), what (made false statements on the Products' packaging), when (in the Class Period), where (in the state of California), and how (by overstating the number of servings per canister)"); *KidsEmbrace*, 2021 WL 3076646 at *5 (finding plaintiff adequately alleged the "who, what, where, when and how" of the alleged fraud).

## IV. CONCLUSION

For all the foregoing reasons, the Court should deny Defendant's renewed Motion to Dismiss. In the event that the Court believes that Plaintiffs have inadequately pleaded any of their claims, Plaintiffs respectfully seek leave to amend the FAC.

**POULIN | WILLEY | ANASTOPOULO, LLC**
*/s/Paul Doolittle*
Paul Doolittle
32 Ann Street
Charleston, SC 29403
Telephone: (803) 222-2222

Email: paul.doolittle@poulinwilley.com
blake.abbott@poulinwilley.com

*Attorneys for Plaintiffs and the Proposed Class*

**CERTIFICATE OF COMPLIANCE**

The undersigned, counsel of record for Hannah Bui and Matthew Hurtado, certifies that this brief contains 5,207, which complies with the word limit of L.R. 11-6.1.

Dated: March 27, 2024

*/s/Paul Doolittle*
Paul Doolittle