**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| HANNAH BUI, et al.,<br>Plaintiffs,<br>v.<br>ZURU LLC,<br>Defendant. | Case No. 2:23-cv-06125-MRA-MRW<br><br>**ORDER GRANTING DEFENDANT'S RENEWED MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT AND DENYING DEFENDANT'S RENEWED MOTION TO STRIKE CLASS ALLEGATIONS AS MOOT [ECF 52, 53] AND REQUIRING SUPPLEMENTAL BRIEFING ON WHETHER TO GRANT LEAVE TO AMEND** |

Before the Court are Defendant Zuru LLC's Renewed Motion to Dismiss Plaintiffs' First Amended Complaint (the "Motion to Dismiss") and Renewed Motion to Strike Class Allegations (the "Motion to Strike") (collectively, the "Motions"). ECF 52, 53. The Court has read and considered the Motions and found these matters appropriate for decision without oral argument. *See* Fed. R. Civ. P. 78; L.R. 7-15. The hearing on the Motions was therefore vacated and removed from the Court's calendar. ECF 67. For the reasons stated herein, the Court **GRANTS** Defendant's Motion to Dismiss and **DENIES** as moot Defendant's Motion to Strike

///

## I. BACKGROUND[1]

Plaintiffs and putative class representatives Hannah Bui and Matthew Hurtado (collectively, "Plaintiffs") filed this putative class action on July 28, 2023. ECF 1. By joint stipulation and with leave of the Court, Plaintiffs filed the operative First Amended Complaint ("FAC") on October 6, 2023. ECF 26.

Defendant Zuru LLC is a corporation known for producing, distributing, and importing children's toys. *Id.* ¶ 22. Plaintiffs are parents residing in South Carolina who purchased Defendant's Baby Shark bath toys (hereinafter, the "Products") prior to June 2023. ECF 26 ¶¶ 1, 11-12, 13-14, 25, 27, 33-35, 40-41.

On June 22, 2023, Defendant issued a recall on the Products through the U.S. Consumer Product Safety Commission ("CPSC") because of safety risks. *Id.* ¶¶ 1, 35, 41; *see also* ECF 49 at 9.[2] The recall notice (hereinafter, "CPSC Recall Notice") describes the

---

[1] The factual background is described as alleged in Plaintiffs' First Amended Complaint unless otherwise indicated. When deciding a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a court is required to presume that all well-pleaded allegations are true, resolve all reasonable doubts and inferences in the pleader's favor, and view the pleading in the light most favorable to the non-moving party. *See Fitzgerald v. Barnstable Sch. Comm.*, 555 U.S. 246, 249 (2009); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Likewise, in deciding a facial challenge to subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1), the court must accept the allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor. *See Wolfe v. Strankman*, 392 F.3d 358, 362 (9th Cir. 2004). However, where the Rule 12(b)(1) challenge is factual, "[t]he court need not presume the truthfulness of the plaintiff's allegations." *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004).

[2] The Court takes judicial notice of a CPSC product recall webpage and the information contained and referenced therein (hereinafter, "CPSC Recall Notice"). *See* ECF 49; *see also* U.S. Consumer Prod. Safety Comm'n, *Zuru Recalls 7.5 Million Baby Shark and Mini Baby Shark Bath Toys With Hard Plastic Top Fins Due to Risk of Impalement, Laceration and Puncture Injuries to Children*, https://www.cpsc.gov/Recalls/2023/Zuru-Recalls-7-5-Million-Baby-Shark-and-Mini-Baby-Shark-Bath-Toys-With-Hard-Plastic-Top-Fins-Due-to-Risk-of-Impalement-Laceration-and-Puncture-Injuries-to-Children (last visited Aug. 8, 2024).

Federal Rule of Evidence 201 "permits a court to notice an adjudicative fact if it is 'not subject to reasonable dispute.'" *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988,

hazard associated with the Products as follows: "When using the recalled bath toys, particularly in a bathtub or wading pool, a child can slip and fall or sit onto the hard plastic top fin of the shark, posing risks of impalement, lacerations and punctures." ECF 49 at 8. The recall covered an approximate 7.5 million units of the Products, which came in full and miniature sizes. ECF 49 at 7. According to the CPSC Recall Notice, there have been 12 reports of children falling or sitting onto the recalled full-sized Products, of which nine incidents required stitches or medical attention. *Id.* at 10. There were no reported incidents or injuries involving the miniature-sized Products. *Id.* The CPSC Recall Notice instructed consumers to contact Defendant for a refund of $14 for each full-sized Product or $6 for each miniature-sized Product. *Id.* at 9-10. The full-sized Products retailed for between $13 and $15. *Id.* at 10. The miniature-sized Products were sold individually and in multi-unit packs for between $6 and $20. *Id.*

Plaintiffs allege that the Products are defective due to the risk of physical injury. ECF 26 ¶¶ 1, 3. Hurtado further alleges that the Product he purchased was also leaking battery acid. *Id.* ¶ 41. At the time of purchase, Defendant had not disclosed these safety risks on the Products' packaging or elsewhere. *Id.* ¶¶ 6, 36, 42. Plaintiffs allege that they bargained for Products that were safe to use. *Id.* ¶ 28. Due to the defects, the Products are

---

999 (9th Cir. 2018) (quoting Fed. R. Evid. 201(b)). "A fact is 'not subject to reasonable dispute' if it is 'generally known,' or 'can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned.'" *Id.* (quoting Fed. R. Evid. 201(b)(1)-(2)). Even if not subject to reasonable dispute, "an irrelevant fact cannot be classified as an adjudicative fact for purposes of Rule 201." *Waterkeeper v. Clay*, No. 18-CV-00333-DOC-DFM, 2023 WL 6787811, at *2 (C.D. Cal. Aug. 25, 2023).

Information contained on a government website is the appropriate subject of judicial notice. *See Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 999 (9th Cir. 2010) (taking judicial notice of information on the websites of two school districts because the information was "made publicly available by government entities"). Plaintiffs does not dispute the authenticity of the CPSC Recall Notice. *See* ECF 49 at 3. To the contrary, Plaintiffs cite the CPSC Recall Notice frequently in their FAC and moving papers. *See* ECF 26 ¶¶ 1 n.1-2, 25 n.6, and 27 n.8; ECF 59 at 6 n.3. The Court therefore takes judicial notice of the CPSC Recall Notice. *See* ECF 49 at 6-20.

now "worthless" and "dangerous." *Id.* ¶¶ 8, 30, 35, 61, 166. As a result, they have "suffered losses," *id.* ¶ 8, and been "deprived the basis of their bargain," *id.* ¶ 28. Had Plaintiffs been aware of the risks, they would not have purchased the Products or would have paid significantly less. *Id.* ¶¶ 37, 43. They would purchase the Products again if the Products were made safe. *Id.* ¶¶ 39, 45.

On these allegations, Plaintiffs assert the following causes of action: (1) unjust enrichment; (2) breach of express warranty; (3) breach of implied warranty; (4) breach of implied warranty of merchantability; (5) fraudulent concealment; (6) strict liability for failure to warn; (7) strict liability for design defect; (8) negligent failure to warn; (9) negligent design defect; and (10) negligence. *Id.* at 14-26. Plaintiffs seek "damages for the injury sustained in being exposed to [safety risks], damages related to Defendant's conduct, and equitable remedies." *Id.* ¶ 29; *see also id.* ¶¶ 30, 38, 39. Specifically, Plaintiffs seek to recover "the cost of the defective product, loss of use of the product and other related damage." *Id.* ¶ 102; *see also id.* ¶ 114 (alleging "damages in the amount of monies paid for the defective Products").

In bringing this action, Plaintiffs also seek to represent the following class and sub-class (collectively, "Classes"): (1) "all persons within the United States who purchased the Products within the applicable statute of limitations," and (2) "all persons within South Carolina who purchased the Products within the applicable statute of limitations." *Id.* ¶ 46.

Defendant first moved to dismiss the FAC and strike Plaintiffs' class allegations on November 3, 2023. ECF 28; ECF 29. The Court (Hon. Fernando M. Olguin presiding) took the motions under submission on December 8, 2023, ECF 45, and then on February 15, 2024, denied the motions without prejudice for failure to comply with Local Rule 7-3, ECF 46. The Court ordered Defendant to file an answer or motion to dismiss no later than March 7, 2024. *Id.*

Defendant timely renewed its Motions and noticed them for hearing on May 16, 2024. ECF 52, 53. Plaintiffs filed Oppositions to the Motions on March 27, 2024. ECF

59, 60. Defendant filed Replies on April 16, 2024. ECF 63, 64. The Court thereafter placed the Motions under submission and vacated the hearing. ECF 67.

## II. LEGAL STANDARDS

### A. Subject Matter Jurisdiction

Federal Rule of Civil Procedure 12(b)(1) provides for dismissal of an action for lack of subject matter jurisdiction. It is well established that "[t]he party invoking federal jurisdiction bears the burden of establishing [jurisdictional] elements." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992); *see also Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). Since jurisdictional elements are "not mere pleading requirements but rather an indispensable part of the plaintiff's case, each element must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, *i.e.*, with the manner and degree of evidence required at the successive stages of the litigation." *Defenders of Wildlife*, 504 U.S. at 561.

A motion to dismiss pursuant to Rule 12(b)(1) can either be a "facial" or "factual" challenge to jurisdiction. *See Safe Air for Everyone*, 373 F.3d 1035, 1039 (9th Cir. 2004). Where, as here, defendant brings a "facial" attack to jurisdiction, "the challenger asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction." *Id.* Where the Rule 12(b)(1) challenge is facial in nature, the court must accept the allegations in the complaint to be true and draw all reasonable inferences in the plaintiff's favor. *See Wolfe v. Strankman*, 392 F.3d 358, 362 (9th Cir. 2004); *see also Warth v. Seldin*, 422 U.S. 490, 501 (1975) ("For purposes of ruling on a motion to dismiss for want of standing, both the trial and reviewing courts must accept as true all material allegations of the complaint, and must construe the complaint in favor of the complaining party.").

### B. Failure to State a Claim

Federal Rule of Civil Procedure 12(b)(6) permits dismissal for "failure to state a claim upon which relief can be granted." Dismissal is appropriate where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory. *See*

*Johnson v. Riverside Healthcare Sys., LP*, 534 F.3d 1116, 1121 (9th Cir. 2008). To survive a Rule 12(b)(6) motion to dismiss, a complaint must "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (per curiam). This is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. The court "must accept as true all of the allegations contained in a complaint," but is "not bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

## III. DISCUSSION

### A. Standing

Defendant argues that Plaintiffs lack standing based on the facts alleged, and therefore brings a facial challenge to the Court's subject matter jurisdiction. *See* ECF 52-1 at 11-16.

The Constitution limits the federal judicial power to "cases" and "controversies." U.S. Const., art. III, § 2. "For there to be a case or controversy under Article III, the plaintiff must have a 'personal stake in the case—in other words, standing." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021) (quoting *Raines v. Byrd*, 521 U.S. 811, 819 (1997)). To establish "the irreducible constitutional minimum" of standing, a plaintiff must show (1) an injury in fact, (2) a causal connection between the injury and the conduct complained of, and (3) a likelihood that the injury will be redressed by a favorable decision. *Defenders of Wildlife*, 504 U.S. at 560-61. When plaintiffs in a class action lack standing, those plaintiffs cannot assert claims on behalf of themselves or any putative class members. *See Lierboe v. State Farm Mut. Auto. Ins. Co.*, 350 F.3d 1018, 1022 (9th Cir. 2003); *Warth*, 422 U.S. at 501 ("[T]he plaintiff still must allege a distinct and palpable injury to himself, even if it is an injury shared by a large class of other possible litigants.").

To satisfy the "injury in fact" requirement, the alleged harm must be "an invasion of a legally protected interest" that is "concrete and particularized" and "actual or imminent, not conjectural or hypothetical." *Id.* at 559–60 (quotations and citations omitted). To be "particularized," the injury "must affect the plaintiff in a personal and individual way." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 339 (2016) (quoting *Defenders of Wildlife*, 504 U.S. at 560). The injury must also be "*de facto*; that is, it must actually exist" for it to be concrete. *Id.* "Article III does not give federal courts the power to order relief to any uninjured plaintiff, class action or not." *Ramirez*, 594 U.S. at 431 (quoting *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 466 (2016) (Roberts, C.J., concurring)).

"Where, as here, a case is at the pleading stage, the plaintiff must clearly . . . allege facts demonstrating each element." *Spokeo*, 578 U.S. at 338. "[G]eneral factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss we 'presum[e] that general allegations embrace those specific facts that are necessary to support the claim.'" *Defenders of Wildlife*, 504 U.S. at 561 (quoting *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 889 (1990)). A plaintiff "must demonstrate standing for each claim he seeks to press . . . [and] for each form of relief sought." *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 352 (2006) (internal citation omitted).

**1. *Claims for Damages***

Defendant argues that the FAC does not allege an injury in fact that can be judicially redressed through an award for damages because Plaintiffs do not claim to have been personally injured by the Products or to have availed themselves of a refund through the recall and refund program. ECF 52-1 at 12-13. Plaintiffs argue that even with the recall and refund, they have suffered an injury in fact because they paid to purchase Defendant's allegedly defective Products and therefore "suffer and continue to suffer financial damages and injury, including but not limited to, the cost of the defective product, loss of use of the product and other related damages." ECF 60 at 16 (citing ECF 26 ¶¶ 61, 75, 102).

Plaintiffs' FAC "raises a serious question of whether [Plaintiffs] ha[ve] 'suffered some actual or threatened injury.'" *Whitson v. Bumbo*, No. 07–CV-05597-MHP, 2009 WL

1515597, at *4 (N.D. Cal. Apr. 16, 2009) (quoting *Valley Forge Christian College v. Ams. United for Separation of Church and State, Inc.*, 454 U.S. 472 (1982)). "The complaint itself is, in large part, a cut and paste job, asserting many causes of action (throwing everything against the wall and seeing what sticks) but alleging very few facts." *Id.* For instance, Plaintiffs do not state *how* they or their children used the Products to claim any exposure to the alleged safety risks associated with the Products. *See* ECF 26 ¶¶ 14, 40, 98; *cf.* ECF 49 at 8 (describing the hazard arising when the recalled Products are used in a bathtub or wading pool). Nor do they allege that they or their children were personally injured through use of the Products. From the FAC, the Court may infer at most that: (1) Plaintiffs purchased the Products, ECF 26 ¶¶ 1, 7, 11-12, 14, 34, 40; (2) some children somewhere were harmed by the Products, *see id.* ¶ 1; ECF 49 at 10; (3) Plaintiffs no longer use the Products due to the alleged safety risks, *id.* ¶ 102; and (4) Plaintiffs now seek to recover the cost of their purchase, *see id.* ¶¶ 65, 102, 114, 149. In other words, they seek a remedy that the CPSC Recall Notice already covers: a refund. *See* ECF 49 at 6-20.

The district court's decision in *Whitson* is instructive. In *Whitson*, the plaintiff bought a baby seat, which was then subject to a CPSC recall due to the risk that children can fall out of the seat when placed on tables. 2009 WL 1515597 at *2. CPSC's remedy was to advise consumers never to use the seat on an elevated surface or leave a child unattended. *Id.* CPSC also noted that consumers could contact the manufacturer to obtain a warning label, free of charge. *Id.* In her complaint, the plaintiff did not allege that any child ever used the seat she purchased, that any child fell from the seat, or that the plaintiff saw or relied upon images showing babies sitting on elevated surfaces in the seat. *Id.* The court held that the plaintiff lacked standing under a "benefit of the bargain" theory, highlighting that the complaint "oscillates between tort and contract law language but fails to allege any actual injury." *Id.* at *6.

Plaintiffs attempt to maintain the same no-injury, benefit-of-the-bargain theory as the *Whitson* plaintiff but fail to elaborate on why the facts alleged here warrant a different result. Indeed, Plaintiffs admit that their FAC "centers around the severity of the risk"

posed by Defendant's Products. ECF 60 at 7. But a threatened injury, without more, does not satisfy the injury-in-fact requirement—it is generalized, not particularized, and hypothetical, not concrete.

To be sure, purely economic injury can be a sufficient basis for standing in certain circumstances. *See Nat'l Audubon Soc'y v. Davis*, 307 F.3d 835, 855-56 (9th Cir. 2002) ("Economic injury is clearly a sufficient basis for standing."). However, Defendant argues that because Plaintiffs' only alleged injury is the cost of the Products, and Plaintiffs have not availed themselves of the offered refund, Plaintiffs have not stated an injury in fact. ECF 52-1 at 12-14. Defendant cites *Savoy v. Collectors Universe, Inc.*, No. SA CV 20-00632-DOC-ADS, 2020 WL 4938464 (C.D. Cal. July 21, 2020). In *Savoy*, the plaintiff alleged that he and putative class members bought trading cards that were altered and devalued, defendants had not upheld their satisfaction guarantees, and as a result plaintiff was harmed. *Savoy*, 2020 WL 4938464 at *2. Crucially, however, the plaintiff had not alleged that he attempted to exercise the satisfaction guarantee. *Id.* at *4. The court observed that "it is well established that if a plaintiff utilizes and is granted a refund pursuant to a satisfaction guarantee clause, then that plaintiff has suffered no injury and hence has no standing." *Id.* at *5. The court held, "then, that if a plaintiff has failed to take advantage of a satisfaction guarantee to redress his injury, the plaintiff cannot clearly and sufficiently allege injury." *Id.*

Plaintiffs argue *Savoy* is inapposite because this case does not involve a satisfaction guarantee clause. ECF 60 at 15. The Court is not convinced that this distinction is material to the analysis. To the contrary, the principle articulated in *Savoy* has been recited by numerous courts to hold that, when a defendant offers a plaintiff a full refund of her alleged losses prior to the commencement of litigation, the refund deprives the plaintiff of Article III standing because she cannot establish injury in fact. *See, e.g., Hamilton v. General Mills, Inc.*, No. 16-CV-382-MC, 2016 WL 4060310, at *5 (finding that plaintiff had not alleged a concrete and particularized injury in fact where the only injury alleged was the purchase price of a product, which was mooted by the manufacturer's refund program);

*Becker v. Skype, Inc.*, No. 12-CV-06477-EJD, 2014 WL 556697, at *2 (N.D. Cal. Feb. 10, 2014) (determining that plaintiff who received a full refund prior to filing suit lacked standing); *Gonzalez v. Comcast Corp.*, No. 10-CV-01010-LJO-BAM, 2012 WL 10621, at * (E.D. Cal. Jan. 3, 2012) (holding that plaintiff failed to plead a concrete injury in fact, where evidence that the refund was inadequate was "highly speculative"); *Epstein v. JP Morgan Chase & Co.*, No. 13-CV-4744-KPF, 2014 WL 1133567, at *3, *6-8 (finding an absence of any "actual" injury, where plaintiff had received, but had not cashed, a refund check).

Instead of identifying any inadequacies with Defendant's recall and refund program, Plaintiffs state in conclusory terms that "the[ir] claims seek relief beyond what a recall can provide." ECF 60 at 18. Plaintiffs have not alleged any "objectively verifiable economic losses that exceeded the recall/refund program of the defendant." *Hamilton*, 2016 WL 4060310, at *5. Plaintiffs do not dispute that the refund program offered by Defendant may compensate them for the purchase price of the Products. *See* ECF 49-1; *cf. Long v. Graco Children's Prods, Inc.*, No. 13-CV-01257-JD, 2014 WL 7204652, at *4 (N.D. Cal. Dec. 17, 2014) (denying motion to dismiss where the defendant did not prove that it offered a full refund). Meanwhile, they have not pleaded that they requested a refund and were denied relief in whole or in part. *Cf. In re MacBook Keyboard Litig.*, 2019 WL 6465285, at *4 (N.D. Cal. Dec. 2, 2019) (finding standing where plaintiffs had alleged that the manufacturer only replaced a defective keyboard with another defective keyboard and its refund did not compensate them for out-of-pocket expenses incurred when seeking repairs). Nor have they pointed to any other economic or non-economic losses that would be left uncompensated by the recall and refund program.

Plaintiffs attempt to distinguish the cases relied upon by Defendant, ECF 60 at 13-16, but offer little to meet *their* burden of establishing the standing elements. *Id.* at 16-17. *See Spokeo*, 578 U.S. at 338 ("The plaintiff, as the party invoking federal jurisdiction, bears the burden of establishing these elements."). Plaintiffs cite only three cases in support of their no-injury, risk-of-harm standing theory, none of which the Court finds persuasive.

*First*, Plaintiffs rely upon *Oceguera v. Baby Trend, Inc.*, No. 21-CV-00398-JWH-KK, 2022 WL 1599869, at *5 (C.D. Cal. Jan. 14, 2022), where the district court held that the plaintiffs had standing to pursue *equitable* remedies over an allegedly defective child car seat. ECF 60 at 13. *Oceguera* is distinguishable in so far as it "deal[s] with economic injuries stemming from the purchase of safety products that were allegedly unsafe." 2022 WL 1599869, at *4. The court concluded that a defective child car seat posed "a distinct risk of harm," such that economic injuries resulting from the purchase of the product constitutes an injury in fact. *Id.* (distinguishing *Herrington v. Johnson & Johnson Consumer Cos., Inc.*, No. 09-CV-1597-CW, 2010 WL 3448531, at *3 (N.D. Cal. Sept. 1, 2010), where the court held that for a risk of harm to constitute an injury in fact in the products liability context, plaintiffs "must plead a credible or substantial threat to their health or that of their children to establish their standing to bring suit"). Unlike a child safety seat, the Products here—bath toys—were not purchased for their safety features, and therefore do not carry the same distinct and palpable risk of harm to support standing.

*Second*, Plaintiffs cite *In re Mattel, Inc., Inc. Toy Lead Paint Prods. Liab. Litig.*, where the court held a manufacturer's offer to replace hazardous toys "does not change the fact that a plaintiff has been injured" and cannot "defeat a plaintiff's claim on standing grounds." 588 F. Supp. 2d 111, 1117 (C.D. Cal. 2008). But as Defendant notes persuasively in its Reply, *In re Mattel* is distinguishable on several grounds. *See* ECF 64 at 9. In *Mattel*, the plaintiffs sought a refund, but defendant's recall program only offered a replacement product, which the court characterized as "a remedy of the defendant's choosing," not plaintiffs'. *See In re Mattel*, 588 F. Supp. 2d at 1117. Furthermore, certain plaintiffs in *Mattel* sought not only a refund but also recovery for future medical monitoring costs related to toxic lead ingestion, such that a refund remedy alone would not have made all plaintiffs whole again. *Id.* Here, Plaintiffs have not identified with particularity any daylight between the remedy they seek and Defendant's refund offer. They seek monetary damages corresponding to the cost of their purchase; Defendant offers to compensate this loss through a refund.

*Lastly*, Plaintiffs refer to *Sanchez v. Wal-Mart Stores, Inc.*, where the district court held that the plaintiff's prayer for restitution to recover money lost from having to replace an allegedly defective stroller and for injunctive relief in the form of a recall was "minimally sufficient" to confer standing to state an unfair competition claim. No. 06-CV-2573-JAM-KJM, 2008 WL 3272101, at *3 (E.D. Cal. Aug. 6, 2008). The FAC is distinguishable from *Sanchez*. Notably, in that case, unlike here, a recall had yet to be issued for the allegedly defective product. Moreover, unlike *Sanchez*, Plaintiffs have not stated that they replaced the Products and suffered some additional economic loss beyond what can be compensated through the refund. *See Whitson*, 2009 WL 1515597, at *6 (distinguishing *Sanchez* on similar grounds).

The FAC also raises traceability concerns to the extent that Plaintiffs, by their own acts or omissions, are responsible for their lack of redress. Plaintiffs allegedly seek the benefit of their bargain but have ignored a readily available remedy, "manufactur[ing] standing" by then rushing to federal court. *Sugasawara v. Ford Motor Co.*, No. 18-CV-06159-LHK, 2019 WL 3945105, at *6 (N.D. Cal. Aug. 21, 2019) (noting that to the extent plaintiff did not avail himself of a manufacturer's recall remedy, any harm that persists is not fairly traceable to the manufacturer but rather to the plaintiff); *see also Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 416 (2013) (finding that respondents had incurred costs and therefore "inflict[ed] harm on themselves based on their fears of hypothetical future harm," such that the alleged injury was not fairly traceable to the challenged statute).

Accordingly, the Court finds that Plaintiffs lack standing to bring claims for damages.

**2. *Claims for Injunctive Relief***

Defendant argues that Plaintiffs lack standing to seek individual and class-wide injunctive relief because they have not alleged any future injury. ECF 52-1 at 15-16. To have constitutional standing to pursue injunctive relief, the threatened injury must be "certainly impending." *Clapper*, 568 U.S. at 409; *see also City of Los Angeles v. Lyons*, 461 U.S. 95, 111 (1983) ("The equitable remedy is unavailable absent a showing of

irreparable injury, a requirement that cannot be met where there is no showing of any real or immediate threat that the plaintiff will be wronged again."). In other words, "[w]here standing is premised entirely on the threat of repeated injury, a plaintiff must show a sufficient likelihood that he will again be wronged in a similar way." *Davison v. Kimberly-Clark Corp.*, 889 F.3d 956, 967 (9th Cir. 2018), *cert. denied*, 139 S. Ct. 640 (2018). "Past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief . . . if unaccompanied by any continuing, present adverse effects." *O'Shea v. Littleton,* 414 U.S. 488, 495–96 (1974).

Plaintiffs point to a single allegation in the FAC—that "they would not have purchased the [P]roducts had Defendant properly disclosed the[ir] true dangerous nature"—to substantiate their injunctive standing theory. ECF 60 at 17-18 (citing ECF 26 ¶¶ 34, 43). This "past exposure" to an alleged hazard does not explain what injury is "threatened" and likely to be "repeated," or even the nature of the injunctive relief that would remedy a "certainly impending" injury.

Plaintiffs disclaim any ongoing use of the Products. *Id.* ¶ 102. They also concede that they would not purchase the Products again unless they were made safe. ECF 60 at 17; *see also* ECF 26 ¶¶ 37, 43. At best, the Court can infer from the FAC that Plaintiffs seek injunctive relief requiring "the Products and packaging [to be] reformulated to be safe and avoid impalement." ECF 26 ¶¶ 39, 45. As Defendants maintain in their Reply, Defendant's recall and refund program—and Plaintiffs' awareness of it—makes certain that Plaintiffs cannot suffer the same harm in the future. The CPSC Recall Notice explains that since May 2023, Defendant has sold a version of the full-size Product with a silicone top fin, instead of hard plastic, that does not pose the same safety hazard. ECF 49 at 13-14. Thus, even if Plaintiff were prepared to repurchase the Products, they still would lack any opportunity "be wronged in a similar way." *Davison*, 889 F.3d at 967.

Plaintiffs nevertheless insist that they have standing to seek injunctive relief even if they do not plan to purchase or use the Products again. ECF 60 at 17-18. They cite two lower court decisions in support of their theory. *See* ECF 60 at 17-18 (citing *Ackerman v.*

*Coca-Cola Co.*, No. 09-CV-395-DLI-RML, 2013 WL 7044866, at *15 (E.D.N.Y. July 18, 2013) and *Koehler v. Litehouse, Inc.*, No. 12-CV-04055-SI, 2012 WL 6217635, at *6 (N.D. Cal. Dec. 13, 2012)). In *Ackerman*, the magistrate judge stated that "courts have consistently held that plaintiffs have standing to seek injunctive relief based on the allegation that a product's labeling or marketing is misleading to a reasonable consumer." 2013 WL 7044866, at *15 n.23. Similarly, in *Koehler*, the court reasoned that a "consumer who avoids the offending product" nevertheless has standing to pursue injunctive relief under California's consumer protection laws because "[t]o [hold] otherwise would eviscerate the intent of the California legislature in creating consumer protection statutes." 2012 WL 6217635, at *6.

Neither case is persuasive. As an initial matter, both cases concern standing to bring claims under California's consumer protection statutes, which carry relaxed statutory standing requirements and generally restrict remedies to equitable relief. *See In re Tobacco II Cases*, 46 Cal. 4th 298, 312 (2015) (describing unfair competition claims as "equitable in nature; damages cannot be recovered" and providing that false advertising claims "allow for the same type of relief") (citation omitted). Plaintiffs have not brought any claims under California's consumer protection statutes, and thus their reliance on *Ackerman* and *Koehler* is misplaced.

Accordingly, the Court finds that Plaintiffs lack standing to pursue injunctive relief.

**B. <u>Failure to State a Claim</u>**

The Court also considers dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6) to the extent it may inform the propriety of granting leave to amend.

**1. *Unjust Enrichment (First Cause of Action)***

Defendant argues that California law does not recognize an independent cause of action for unjust enrichment. ECF 52-1 at 20-21. The Ninth Circuit has clarified that "in California, there is not a standalone cause of action for 'unjust enrichment,' which is synonymous with 'restitution.'" *Astiana v. Hain Celestial Grp.*, 783 F.3d 753, 762 (9th Cir. 2015) (citations omitted); *cf. Shum v. Intel Corp.*, 499 F.3d 1272, 1279 (9th Cir. 2007)

(holding that "[u]nder California law, unjust enrichment claims can exist as a separate cause of action when 'the claim is grounded in equitable principles of restitution.'" (quoting *Hirsch v. Bank of Am.*, 107 Cal. App. 4th 708, 721-22 (2003))). The Court follows this recent precedent in finding that Plaintiffs cannot state a cause of action for unjust enrichment as a matter of law.

Nevertheless, unjust enrichment is not "irrelevant in California law;" it "describe[s] the theory underlying a claim that a defendant has been unjustly conferred a benefit 'through mistake, fraud, coercion, or request.'" *Astiana*, 783 F.3d at 762 (quoting 55 Cal. Jur. 3d Restitution § 2). Thus, when a plaintiff alleges unjust enrichment, a court may "construe the cause of action as a quasi-contract claim seeking restitution." *Id.* (quoting *Rutherford Holdings, LLC v. Plaza Del Rey*, 223 Cal. App. 4th 221, 166 (2014)) (internal quotation marks omitted). Accordingly, the general principle under California law is that "one who is unjustly enriched at the expense of another is required to make restitution." *Pro. Tax Appeal v. Kennedy-Wilson Holdings, Inc.*, 29 Cal. App. 5th 230, 239 (2018). To claim restitution, Plaintiff must allege (1) receipt of a benefit and (2) unjust retention of the benefit at the expense of another. *Lectrodryer v. Seoulbank*, 77 Cal. App. 4th 723, 726 (2000).

Defendant contends that even if the Court were to construe Plaintiffs' unjust enrichment claim as a claim for restitution, Plaintiffs have failed to state a quasi-contract claim because Defendant has not unjustly retained any benefit at their expense. ECF 52-1 at 21. Plaintiffs describe their quasi-contract theory as "the bargain between the parties require[ing] that the toys Defendant sold were safe for Plaintiffs and their children and they were not." ECF 60 at 22. Plaintiffs make no attempt to align their arguments with the elements of a quasi-contract claim. Had they done so, the Court would still find that they have failed to state a claim for restitution. Based on the pleaded facts, the Court can reasonably infer that the benefit allegedly retained by Defendant is the purchase price for the Products. But "[u]njust enrichment 'presupposes the acceptance and retention of [that] benefit . . . with full appreciation of the facts, under circumstances making it inequitable

for the benefit to be retained without payment of the reasonable value thereof.'" *Van de Kamp v. Bank of Am.*, 204 Cal. App. 3d 819, 855 (1988) (quoting *Major-Blakeney Corp. v. Jenkins*, 121 Cal. App. 2d 325, 339 (1953)). Here, per the CPSC Recall Notice, Defendant has offered to refund the cost of the Products, and therefore has not insisted on retaining any benefit, unjustly or otherwise. ECF 49-1. Plaintiff's claim for restitution thus fails.

**2. *Negligence and Strict Liability Claims (Sixth, Seventh, Eighth, Ninth, and Tenth Causes of Action)***

Defendant argues that the economic loss rule bars Plaintiffs' tort claims. ECF 52-1 at 21-24. "Simply stated, the economic loss rule provides: Where a purchaser's expectations in a sale are frustrated because the product he bought is not working properly, his remedy is said to be in contract alone, for he has suffered only 'economic' losses." *Robinson Helicopter Co., Inc. v. Dana Corp.*, 34 Cal. 4th 979, 988 (2004) (citation and internal quotation marks omitted). The rule therefore "requires a purchaser to recover in contract for purely economic loss due to disappointed expectations, unless he can demonstrate harm above and beyond a broken contractual promise." *Id.* (citation omitted). Plaintiffs contend that their tort claims are independent of their contract claims, and therefore exempt from the economic loss rule. ECF 60 at 22-24 (citing *Erlich v. Menezes*, 21 Cal. 4th 543, 552 (1999)).

The economic loss rule squarely precludes Plaintiffs' recovery under a negligence or strict liability theory. Plaintiffs seek to recover the cost of their "worthless" Products. ECF 26 at 8. That is economic loss, plain and simple. *See Robinson*, 34 Cal. 4th at 988 (defining "economic loss" as "'damages for inadequate value, costs of repair and replacement of the defective product or consequent loss of profits'" (quoting *Jimenez v. Superior Ct.*, 29 Cal. 4th 473, 482 (2002)). Plaintiffs do not allege physical injury or property damage; thus, their strict liability claims are barred. *See Jimenez v. Superior Ct.*, 29 Cal. 4th 473, 482-83 (2002) ("[R]ecovery under the doctrine of strict liability is limited solely to 'physical harm to person or property.'" (quoting *Seely v. White Motor Co.*, 63 Cal.

2d 9, 45 (1965)). Plaintiff's negligence claim is precluded on the same grounds. *See Aas v. Superior Ct.*, 24 Cal. 4th 627, 646 (2000) ("[A]ppreciable, nonspeculative, present injury is an essential element of a tort cause of action."); *see also Erlich*, 21 Cal. 4th at 559 (holding that a negligent breach of contract may give rise to damages for mental suffering or emotional distress only "when the express object of the contract is the mental and emotional well-being of one of the contracting parties").

Plaintiffs have not demonstrated that an exception to this well-established rule applies to their negligence and strict liability claims. In *Erlich*, the California Supreme Court expressly cautioned that tort recovery in contract cases is an "exceptional approach" generally restricted to the insurance context, where there is a "special relationship between insurer and insured." 21 Cal. 4th at 553-554. Beyond the insurance context, the court observed that "[t]ort damages have been permitted in contract cases where a breach of duty directly causes physical injury []; for wrongful discharge in violation of fundamental public policy; or where the contract was fraudulently induced." *Id.* at 551-52 (internal citations omitted). "In each of these cases, the duty that gives rise to tort liability is either completely independent of the contract or arises from conduct which is both intentional and intended to harm." *Id.*

Plaintiffs argue that their tort claims are not barred because the duty giving rise to tort liability took place prior to the formation of the contract," and therefore is completely independent of the contract. ECF 60 at 24. Plaintiffs altogether miss the point: a plaintiff who has suffered purely economic loss, not physical injury or property damage, cannot recover through negligence or strict liability. *See Jimenez*, 29 Cal. 4th at 482-83; *Aas*, 24 Cal. 4th at 646.

Plaintiffs also contend that Defendant's alleged misrepresentations and fraudulent omissions are not subject to the economic loss rule because they constitute intentional conduct intended to cause harm. ECF 60 at 24. While that may support their recovery in tort for fraudulent concealment, *see* Section III.B.3., *infra*, it does not permit recovery under their other theories of tort liability. *See Robinson*, 24 Cal.4th at 993 (narrowly

holding that "the economic loss rule does not bar [plaintiff's] fraud and intentional misrepresentation claims because they were independent of [defendant's] breach of contract"). To hold otherwise would impermissibly result in "the law of contract and the law of tort . . . dissolving one into the other." *Id.* at 988 (internal citations and quotation marks omitted).

### 3. *Fraudulent Concealment (Fifth Cause of Action)*

Defendant argues that the economic loss rule also precludes Plaintiffs' fraudulent concealment claim. ECF 52-1 at 23-24. Whether the economic loss rule applies to and therefore precludes a fraudulent concealment claim is an unresolved question of law in California. In *Robinson*, the California Supreme Court explicitly declined to address whether intentional concealment "constitutes an independent tort." *Robinson*, 34 Cal. 4th at 988, 993 (limiting its holding to "a defendant's *affirmative misrepresentations* on which a plaintiff relies and which expose a plaintiff to liability for personal damages independent of the plaintiff's economic loss" (emphasis added)). The California Court of Appeals recently observed that state courts and federal district courts applying California law have diverged on this question. *See Dhital v. Nissan N. Am., Inc.*, 84 Cal. App. 5th 828, 841 (2022). Nevertheless, the court ruled that "the economic loss rule does not bar plaintiffs' claim here for fraudulent inducement by concealment." *Id.* at 843. There, as here, plaintiff had alleged presale concealment that was distinct from its subsequent conduct in breaching its warranty obligations. *Id.* at 841. In 2021, the Ninth Circuit certified the question—whether fraudulent concealment claims are exempt from the economic loss rule under California law—to the California Supreme Court, which granted the request. *Rattagan v. Uber Techs., Inc.*, 19 F.4th 1188, 1190-1193 (9th Cir. 2021), *request for certification certification granted*, S272113 (Feb. 9, 2022). The case remains pending. Given the unsettled nature of the law on this issue and that dismissal is warranted on other grounds, however, the Court need not resolve this question at this time.

Even if the economic loss rule did not preclude Plaintiff's fraudulent concealment claim, it must be dismissed because Plaintiffs have not satisfied the requirements under

Rule 9(b). Rule 9(b) provides that when fraud is alleged, "a party must state with particularity the circumstances constituting fraud." This heightened pleading standard "demands that the circumstances constituting the alleged fraud 'be specific enough to give defendants notice of the particular misconduct . . . so that they can defend against the charge and not just deny that they have done anything wrong.'" *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009) (quoting *Bly-Magee v. California*, 236 F.3d 1014, 1019 (9th Cir. 2001)). The plaintiff must set forth "the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentation." *Odom v. Microsoft Corp.*, 486 F.3d 541, 553 (9th Cir. 2007). "However, in the context of a fraudulent omission claim, a plaintiff cannot plead a specific time or place of a failure to act. In that instance, a plaintiff may plead fraud by alternative means." *Peel v. Brooks Am. Mortg. Corp.*, 788 F. Supp. 2d 1149, 1160 (C.D. Cal. 2011) (internal citation omitted). The plaintiff "must describe the content of the omission and where the omitted information should or could have been revealed, as well as provide representative samples of advertisements, offers, or other representations that plaintiff relied on to make her purchase and that failed to include the allegedly omitted information." *Asghari v. Volkswagen Grp. of Am., Inc.*, 42 F. Supp. 3d 1306, 1325-26 (C.D. Cal. 2013) (citation omitted).

In their FAC, Plaintiffs state that Defendant did not disclose the safety risks associated with the Products on their packaging. ECF 26 ¶¶ 36, 42. They further allege that had they been made aware of the risks, they "would not have purchased the Products or would have paid significantly less." *Id.* ¶¶ 37, 43. Plaintiffs include visual depictions of the Products' packaging, indicating where omission should have appeared. *Id.* ¶ 27, at 6-8. Crucially, however, the FAC does not contain any allegations that Plaintiffs reviewed this packaging and relied upon its content when making their purchases.

Nor have Plaintiffs alleged any affirmative acts of concealment on the part of Defendant. Under California law, "mere nondisclosure does not constitute active concealment." *Herron v. Best Buy Co., Inc.*, 924 F. Supp. 2d 1161, 1176 (N.D. Cal. 2013). Rather, a plaintiff must plead "affirmative acts on the part of the defendants in hiding,

concealing or covering up the matters complained of." *Id.* (quoting *Lingsch v. Savage*, 213 Cal. App. 2d 729, 734 (1963))*; see also Taragan v. Nissan N. Am., Inc.*, No. C 09-3660-SBA, 2013 WL 3157918, at *7 (N.D. Cal. June 20, 2013) (granting dismissal of fraudulent concealment claim where plaintiffs had failed to allege with the requisite particularity how the defendant "'sought to suppress information in the public domain or obscure the consumers' ability' to discover it" (quoting *Gray v. Toyota Motor Sales, U.S.A.*, No. 08-CV-1690-PSG, 2012 WL 313703, at *10 (C.D. Cal. Jan. 23, 2012)). For "if mere nondisclosure constituted 'active concealment,' the duty requirement would be subsumed and any material omission would be actionable. This is not the law." *Gray*, 2013 WL 313703, at *10.

The FAC does not contain any facts indicating that Defendant suppressed information or engaged in any other affirmative acts that plausibly constitute active concealment. To the contrary, Plaintiffs offer nothing more than conclusory allegations that "Defendant failed to discharge its duty to disclose these material facts." ECF 26 ¶ 111. But "conclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss." *Fayer v. Vaughn*, 649 F.3d 1061, 1064 (9th Cir. 2011) (internal quotation marks omitted); *see also Iqbal*, 556 U.S. at 678. And even if the Court were to accept this allegation as true, it would still fall short of alleging concealment. *See Herron*, 924 F. Supp. 2d at 1176. Plaintiffs do not address this deficiency in their Opposition to the Motion to Dismiss. *See* ECF 60. Plaintiffs have therefore failed to state a fraudulent concealment claim.

**C. <u>Leave to Amend</u>**

Federal Rule of Civil Procedure 15(a) provides that after a party has amended a pleading once as a matter of course, it may amend further only after obtaining leave of the court, or by consent of the adverse party. In general, "[t]he court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). "This policy is to be applied with extreme liberality." *Owens v. Kaiser Found. Health Plan, Inc.*, 244 F.3d 708, 712 (9th Cir. 2001) (quoting *Morongo Band of Mission Indians v. Rose*, 893 F.2d 1074, 1079 (9th Cir.

1990)). "If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits." *Foman v. Davis*, 371 U.S. 178, 182 (1962).

Notwithstanding the liberal standard under Rule 15(a), leave is "not to be granted automatically." *In re W. States Wholesale Nat. Gas Antitrust Litig.*, 715 F.3d 716, 738 (9th Cir. 2013) (quoting *Jackson v. Bank of Hawaii*, 902 F.2d 1385, 1387 (9th Cir. 1990)), *aff'd sub nom. Oneok, Inc. v. Learjet, Inc.*, 575 U.S. 373 (2015). In determining the propriety of granting leave to amend, Courts are required to balance the following factors: (1) undue delay; (2) bad faith or dilatory motive of the moving party; (3) repeated failure to cure deficiencies by amendments previously allowed; (4) undue prejudice to the non-moving party by virtue of allowance of the amendment; and (5) futility of amendment. *Eminence Capital*, 316 F.3d 1048, 1052 (9th Cir. 2003) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

Of the *Foman* factors, the Court finds that futility is most relevant to determining the propriety of granting leave to amend in this case.[3] This Order spells out several infirmities in Plaintiffs' FAC. Fatal to Plaintiffs' case is their lack of an injury in fact to support Article III standing. Even if Plaintiffs were to amend their pleading to plausibly allege an injury in fact, they would still need to sufficiently state their claims. The Court therefore has serious doubts that Plaintiffs can amend their pleading to survive dismissal. Indeed, Plaintiffs do not identify any additional facts that they would include in a second amended complaint in their Opposition. For its part, Defendant contends in its Notice of Motion that Plaintiffs have "no way to rectify their lack of standing through any amendment." ECF 52 at 2. Nevertheless, the Court requests supplemental briefing addressing this issue pursuant to the instructions and briefing schedule set forth below.

///

---

[3] There is no evidence of delay, bad faith, or undue prejudice, and until now, the Court had not yet identified any deficiencies with Plaintiffs' pleading.

## IV. CONCLUSION

For the foregoing reasons, Defendant's Motion to Dismiss is **GRANTED** and Defendant's Motion to Strike is **DENIED** as moot. The Court further **ORDERS** as follows:

1. Plaintiffs shall file a memorandum, not to exceed five (5) pages in length, within ten (10) days of the date of this Order, addressing why leave to amend should be granted. Plaintiffs shall explain in detail why further amendment would not be futile, and how they would amend their pleading consistent with this Order. Plaintiffs' failure to respond shall result in immediate dismissal of this action with prejudice.

2. Defendant may file a memorandum in response, not to exceed five (5) pages in length, within seven (7) days of the date of Plaintiffs' response.

3. The Court shall take the memoranda under submission. *See* Fed. R. Civ. P. 78; L.R. 7-15. No oral argument regarding this matter will be heard unless ordered by the Court.

**IT IS SO ORDERED.**

Dated: August 8, 2024

HON. MÓNICA RAMÍREZ ALMADANI
UNITED STATES DISTRICT JUDGE